**HARDBOARD MACHINERY CO., Inc., Plaintiff,**

v.

**COASTAL PRODUCTS CORPORATION and Robert D. Conner, Defendants.**

**The TAYLER CORPORATION, Plaintiff,**

v.

**COASTAL PRODUCTS CORPORATION and Robert D. Conner, Defendants.**

**WALLBOARD DRAYER CORPORATION, Plaintiff,**

v.

**COASTAL PRODUCTS CORPORATION and Robert D. Conner, Defendants.**

**William R. TAYLER, Plaintiff,**

v.

**COASTAL PRODUCTS CORPORATION and Robert D. Conner, Defendants.**

**Civ. A. No. 726-729.**

United States District Court
M. D. Georgia,
Valdosta Division.

June 29, 1967.

---

Reinhardt, Ireland, Whitley & Sims, Tifton, Ga., for plaintiffs.

Parker, Foster & Madigan, Tallahassee, Fla., Franklin, Barham, Coleman, Elliott & Blackburn, Valdosta, Ga., for defendants.

## MEMORANDUM

BOOTLE, Chief Judge.

I have decided to sustain the motions to dismiss these four libel suits.

In Georgia libel and slander are succinctly defined in Code §§ 105–701 and 105–702 (and newspaper libel in 105–703). Under § 105–702 "charges made against another in reference to his trade, office, or profession, calculated to injure him therein" are actionable per se, because in such instances said Code Section says "damage is inferred." Van Epps v. Jones, 50 Ga. 238 (1873).

We pretermit the question whether it is sufficiently alleged, or could be, that the words complained of were used "in reference to" plaintiffs' "trade, * * * or profession." In *Van Epps*, the court said:

"The defect in the declaration is, that it does not charge that the words were used in reference to the plaintiff's profession. The statute is positive, that they must be so spoken or made. Nor is there anything in the declaration from which it can be fairly inferred that the charge was made in reference to plaintiff's profession. It

is not enough that defendant knew he [plaintiff] was a lawyer. Can it be contended that it is actionable to say of a lawyer that he will not pay his debts, much less a particular debt? I am not sure that it would be actionable to say of a lawyer, falsely, that he would not pay some particular money collected by him as a lawyer, or that it would be actionable to say of a blacksmith, untruly, that he had burned a certain horse in shoeing him. The authorities indicate that the charge must be of something that affects his character generally in his trade. A particular act may or may not do this, and the matter would depend on the colloqium. But the authorities are uniform that the words must be charged to have been used in reference to one's trade or profession. The speaker must have had the trade or profession of the plaintiff in view, and utter the words in reference to it, as if he should say of a grocery merchant, he keeps false weights, or of a lawyer, that he won't pay his clients the money he collects for them: Starkie on Slander, 109, 126. It would be entirely a new ground of action to hold that it was actionable to utter of a lawyer that he refused to pay a particular debt, there being nothing in the words or in the colloqium to indicate that the speaker was alluding to him as a lawyer. Such a rule would put lawyers on a vantage ground that the law has not put them on: See Starkie on Slander, 109, 126." pp. 241, 242.

Similarly, it may be asked in these cases whether it is actionable to say of the plaintiffs that they in one instance made a mistake in concluding that one firm was indebted to them, or that they in one instance were late in rendering an accounting, absent any charge that they generally or customarily do such things. See also Mell v. Edge, 68 Ga.App. 314(1), 22 S.E.2d 738 (1942) and Ford v. Lamb, 116 Ga. 655, 42 S.E. 998 (1902).

But there is another phrase in the definition, namely, "calculated to injure

him therein." That raises the question whether the language used in these three letters complained of is libelous or not. In 33 Am.Jur., Libel and Slander, § 5, page 41, it is said:

"* * * the conclusion must not be drawn that every conceivable statement will give rise to a cause of action on proof of injury to another. Where words are innocent or justifiable they will not support an action even though they may have occasioned some special damage, and it has been said that in per quod actions it is not only necessary to show that the language used did produce actual damage, but it must also appear that such language was defamatory and scandalous,"

and in determining whether words are defamatory and scandalous or not, the same authority, in § 84, page 97, continues:

"A forced construction is not to be put upon words in order to relieve the defendant from liability; nor will the courts hunt for a strained construction in order to hold the words libelous. Now, words are to be taken not in their mildest or most grievous sense, but in that sense in which they would be understood, and in which they appear to have been used, and according to the idea which they are adapted to convey to those who hear them, or to whom they are addressed. The ordinary signification in popular parlance of the statement made is the vital question in each case, or, in other words, it is a question of the natural and obvious meaning of the words used, * * *."

See Anderson v. Kennedy, 47 Ga.App. 380, 170 S.E. 555 (1933).

Three letters are complained of, all virtually the same, except as to addressees and names of plaintiffs referred to, and while two of the letters say "we have been unable to get an accounting", the third says "they have not yet given us an accounting." It is obvious that these letters are defensive in nature.

The writer begins by acknowledging receipt of a copy of a letter dated 8 days earlier, written by the individual plaintiff (as distinguished from the three corporate plaintiffs) in which the individual plaintiff had alleged that the corporate defendant had failed to pay ("failure to pay") one or more of the corporate plaintiffs. The complained of letters continue: "We are not *at this time* indebted to Hardboard Machinery Company, Inc. for any amount which is *due and payable*." (Underscoring supplied). The letters continue to recite that the corporate defendant had advanced certain sums to the corporate plaintiffs many months ago as a deposit on equipment to be furnished by them and that *"at this date* we owe them nothing that is due and payable. In fact, they have not *yet* given us (in two letters 'we have been unable to get') an accounting for the $285,000 which we advanced to them." The letters conclude with this paragraph.

"We hope you will be able to resolve to your satisfaction any problems you have with these people. *We felt compelled, in view of Mr. Tayler's letter,* to write you and set the record straight that we are not responsible for any cash difficulties which Mr. Tayler or his ('various' in two letters) corporations *might* be experiencing." [All emphasis supplied).

▆ The plaintiffs and the corporate defendant were having complicated business transactions involving large sums of money and a complicated written contract which was rescinded by a second contract, which second contract was revised by a third and fourth contract under all of which the plaintiffs were constructing a manufacturing plant for the corporate defendant. During the progress of the construction the plaintiffs wrote three letters to some suppliers of machinery and equipment alleging that plaintiffs' failure to pay these suppliers had resulted from the corporate defendant's "failure to pay" the plaintiffs. While this charge made by plaintiffs against the corporate de-

fendant may or may not be libelous (we have not seen those letters), it was nevertheless of such serious nature as to prod the defendants into feeling "compelled * * * to write * * * and set the record straight." We pretermit the question here whether these suits could be dismissed because of Code § 105–709, which says:

"The following are deemed privileged communications:

"* * *

"3. Statements made with the bona fide intent, on the part of the speaker, to protect his own interest in a matter where it is concerned,"

this pretermission being on the theory that this is a conditional privilege and the burden rests upon the defendants to prove the elements thereof including bona fide intent. Sheftall v. Central of Georgia Railway Company, 123 Ga. 589, 51 S.E. 646 (1905); Lamb v. Fedderwitz, 71 Ga.App. 249, 252–254, 30 S.E.2d 436 (1944); Ivins v. Louisville & Nashville Railroad Company, 37 Ga.App. 684, 685(8), 141 S.E. 423 (1928). To the contrary, however, see Whitley v. Newman, 9 Ga.App. 89, 70 S.E. 686 (1910) holding that it was proper to dismiss on demurrer a slander suit charging that a representative of plaintiff's employer had said to plaintiff's wife, "Mr. Whitley [plaintiff] is short with us * * *. For your [meaning Mrs. Whitley] own good, you had better give me this mortgage, for in the wind-up you will have to pay it" notwithstanding the fact that the complaint alleged that the speaker knew that his statement was untrue and that it was not made bona fide in the performance of any duty nor with a bona fide intent to protect his own interest. (Pages 92 and 93, 70 S.E. page 687). To the same effect, see Hardeman v. Sinclair Refining Company, 41 Ga.App. 315, 152 S.E. 854 (1930). At any rate, we think it proper to consider the defensive and privileged character of the letters in determining the sense "in which they appear to have been used, and * * * the idea which they are

adapted to convey * * *." 33 Am. Jur., Libel and Slander, § 84, page 97.

The law looks a little askance at one's failure to deny a specific charge made in his presence. If the defendants had not denied this charge of "failure to pay" could the defendants reasonably apprehend that in the breach of contract litigation then in the offing, and which was instituted in this court on the same day these four libel suits were filed, (in the breach of contract litigation The Tayler Corporation and Hardboard Machinery Co., Inc. claim against Coastal Products Corporation $457,855.98, and by cross-action in two counts Coastal Products Corporation claims against them damages in excess of $2,164,670.03), counsel representing plaintiffs might attempt to introduce in evidence the corporate defendant's silence in the premises?

The words in the above discussion of the letters indicate the mildness, the moderation, and, we think, the non-libelous character of the letters. The phrases "at this time", "at this date", "due and payable" (appearing twice), all indicate that eventually the corporate defendant might owe the plaintiff some amount, but that any such amount was not then due. The word "yet" indicates that the defendants were still expecting an accounting. The word "might" avoids any charge of even cash difficulties, much less insolvency.

■ We think plaintiffs in the complaints overload the mechanism or device known as "innuendo" and place upon it a burden it cannot carry in these cases. "An 'innuendo' in pleading in libel action is a statement by plaintiff of construction which he puts upon words which are alleged to be libelous and which meaning he will induce the jury to adopt at trial." Black's Law Dictionary, pp. 927, 928. These letters do not impute to plaintiffs any acts which were "criminal, unlawful, improper, and unethical in their nature" and do not charge that they had "misappropriated funds entrusted" to them, or that they were "otherwise fraudulent or dishonest" in their business and dealings with the corporate defendant as alleged. We do not see that they even accuse plaintiffs of "uttering false statements" as alleged.

A case in point is Dun v. Maier et al., 82 F. 169 (5th Cir.1897). It was alleged that the defendants published in their Weekly Change Sheet and circulated among their subscribers the false statement: "Altanta: Maier & Berkele: M. Berkele gives R. E. deeds, $4,100. Jewelry;" "meaning thereby" the declaration further alleges "that said firm was in the jewelry business, and that the Berkele thereof had conveyed to others real estate belonging to him of the value of $4,100, and thus diminished to such an extent the property accessible to creditors of said firm for the payment of debts due them;" and it was alleged that the statement was "false and malicious" and made "in pursuant of" a "threat" "to do up your petitioners." The Court of Appeals held that demurrers should have been sustained, quoting with approval some ancient authorities as follows:

" 'It is the office of an innuendo to define the defamatory meaning which the plaintiff sets on the words, to show how they came to have that defamatory meaning * * *. But an innuendo may not introduce new matter, or enlarge the natural meaning of words. It must not put upon the defendant's words a construction which they will not bear. If the words are incapable of the meaning ascribed to them by the innuendo, and are prima facie not actionable, the declaration will be held bad on demurrer, or if there be no demurrer, the judge at the trial will stop the case.' "

The court continued:

"In the present case the words published are harmless in themselves, and have a plain and unambiguous meaning. They certainly do not directly impute to Berkele any fraud, dishonesty, or misconduct in the management of his business, or in any matter

connected therewith; and it would require a strained and unnatural construction of the words for the court to presume that their tendency was to injure Berkele, much less the firm of the defendants in error, in his business as a merchant. The legal presumption is in favor of honesty and uprightness in business transactions, and the adoption of the construction placed by the defendants in error upon the words in question would require a reversal of that salutary rule, and stamp as dishonest and fraudulent a sale of real estate, simply because it was made by a person engaged in mercantile pursuits. We refrain from going to that extent, as we appreciate too highly the value of commercial character, and the necessity of preserving it untarnished." Page 173.

■ While to write and publish of another that he is a liar is libelous, Colvard v. Black, 110 Ga. 642(1), 36 S.E. 80 (1900), the letters complained of fall far short of charging the plaintiffs with prevarication. See Hughes v. Rhodes, 111 Ga.App. 389, 394, 141 S.E.2d 841 (1965). If we construe plaintiffs' representations to suppliers concerning defendant's "failure to pay" as affirmative representations by plaintiffs that the corporate defendant owed plaintiffs money then due and payable, the normal meaning ascribable to such representations would be that plaintiffs were expressing an opinion based upon their interpretation of facts and legal documents that such indebtedness existed. Likewise, the natural interpretation to be placed upon defendants' letters is that the writer of the letters was expressing his opposite opinion upon such facts and legal documents.

Under the facts as disclosed by the pleadings, the letters' sentences "they have not yet given us an accounting" or "we have been unable to get an accounting" do not render the letters libelous. See Whitley v. Newman, supra, where the same conclusion was reached with reference to the statement: "Mr. Whitley is short with us * * *.", and

Hardeman v. Sinclair Refining Company, 41 Ga.App. 315, 152 S.E. 854, where the same conclusion was reached with reference to the statement that the defendant's agent "told J. F. McLarty that Frank Hardeman was short with said Sinclair Refining Company $1600, meaning that he had stolen that amount from said Sinclair Refining Company, thereby charging plaintiff with the offense of larceny, a crime punishable by confinement in the penitentiary, which statement and charge was absolutely untrue."

The recent case of Diplomat Elec., Inc. v. Westinghouse Elec. Supply Co., 378 F.2d 377 (5th Cir. 1967) recognizes that the management, credit and solvency of a corporation are carefully guarded by the law and that a publication assailing its management or credit is libelous per se. That case serves well in showing what kind of an assault upon the management, credit, or solvency of a corporation is libelous per se. The letter there sued upon, in the first place, was "not such as would ordinarily go out in the normal course of a credit manager's job" and, in the second place, it said that the plaintiff's account was "delinquent" and had been from August, 1964 to January, 1965; that plaintiff *knew* of the delinquency and had promised to pay it; and had "failed to keep * * * [its] several commitments." The letters sued upon in the case at bar are of the type naturally and normally expected under the circumstances. They are simply denials of charges of "failure to pay" hurled by plaintiffs against the defendants, written according to their terms under a compulsion to "set the record straight". Moreover, these letters sued on here do not in any manner assail the management or credit or solvency of plaintiffs. They do not accuse plaintiffs of owing anything. They simply deny the charge that defendants presently—"at this time" or "at this date"—are indebted to plaintiffs. The additional statement that plaintiffs "have not yet given us an accounting" or "we have been unable to get an accounting" are quite innocuous absent

any charge that an accounting was past due, or due, or had been promised. It is evident that defendants used the two quoted phrases synonymously. The phrase "not yet given" will not even support an inference that an accounting had even been requested. While the other phrase "unable to get" may support an inference that an accounting had been requested, it will not support even an inference that under the contractual arrangments between the parties an accounting had been promised, or was then due, much less past due. The money was advanced as a deposit on equipment to be furnished by plaintiffs. There is no suggestion that the money had been misused or misapplied in any manner. For all that appears the delay in sending an account, assuming that one was due, and assuming that there was a delay, was due to an overload of bookkeeping work or to a shortage of clerical help.

 These are diversity cases and therefore this court must look to the law of Georgia for the substantive law including the state choice of law rules. Baron Tube Co. v. Transport Insurance Co., 365 F.2d 858, 860 (5th Cir. 1966). Under Georgia law the lex loci delicti determines the substantive rights of the parties. Ohio Southern Express Co. v. Beeler, 110 Ga.App. 867, 868, 140 S.E.2d 235. In libel actions the law of the state where the defamations are published controls. Diplomat Elec., Inc. v. Westinghouse Elec. Supply Co., supra. In this case the alleged defamations were published in Illinois, Ohio and New York. The parties are agreed that each of those three states has adopted the common law and that these cases should be decided by the common law principles prevailing in those states but as construed by the Georgia courts. Slaton v. Hall, 168 Ga. 710, 148 S.E. 741, 73 A.L. R. 891 (1929); Turner v. Atlantic Coast Line Railroad Co., 292 F.2d 586, 587 (5th Cir. 1961). In Georgia the libel and slander Code sections are a codification of the common law. American Broadcasting etc. v. Simpson, 106 Ga. App. 230, 237, 126 S.E.2d 873 (1962).

So it is therefore that the substantive law governing these cases is the common law as ruled in the Georgia cases cited herein.

Inasmuch as the publication of the letters sued upon took place in Illinois, Ohio, and New York a reference to one decision from each of those three states, however, may be of interest. An interesting Illinois case is Parmelee v. Hearst Publishing Co., 341 Ill.App. 339, 93 N. E.2d 512 (1950) wherein Westbrook Pegler wrote an article referring to the plaintiff, an author of many books, a lecturer and economist, as "author of depraved books", one of "strange company" and one of "wild people who worm their way into the government." The plaintiff charged that the article imputed that the plaintiff was a Communist.

The Illinois Appellate Court held that these words were not libelous per se and approved the dismissal of the cause upon the defendant's motion to dismiss for failure to state a cause of action saying that the words were not libelous per se, and in view of the fact that the plaintiff had not alleged special damages with particularity the allegations were not sufficient to state a case of libel per quod.

In Julian v. American Business Consultants, 2 N.Y.2d 1, 155 N.Y.S.2d 1, at pages 13 and 14, 137 N.E.2d 1, at pages 9 and 10, the trial court dismissed the complaint and New York Court of Appeals affirmed the same, and in the course of its opinion said:

"* * * the trial court and the Appellate Division have found that the book is not libelous. They held that the charge of the plaintiff that the book is defamatory in that it exposed him to contempt and aversion and touched him in the way of his office or trade, is unsubstantiated. To date six Justices of the Supreme Court of this State have read the book carefully and have decided that there was no defamatory matter published of and concerning the plaintiff."

* * * * * *

"It is for the court to decide whether a publication is capable of the meaning ascribed to it. The 'court shirks its duty if it creates an issue, when none exists.' Crane v. New York World Tel. Corp., 308 N.Y. 470, 479–480, 126 N.E.2d 753, 759 [52 A.L.R.2d 1169]. The book must be read as a whole. The words and phrases must be construed together with their context. (Seelman, Law of Libel and Slander in New York, par. 160, p. 138). The interpretation placed by plaintiff upon the title and statements in the introduction is unwarranted."

In Becker v. Toulmin, 165 Ohio St. 549, 138 N.E.2d 391, the Ohio Appellate Court reversed the trial court on the ground that the question of whether the publication of the cablegram and letter were libelous per se should not have been submitted to the jury. In the course of its opinion the court said on page 556 of the opinion, page 396 of 138 N.E.2d:

"We have said that it is the law that, where the words of a publication are not of themselves ambiguous and do not of themselves, or per se, reflect upon a person's character or affect him injuriously in his trade or profession, such words do not constitute libel per se. If the court can not determine a publication to be libelous per se as a matter of law, it may not allow the jury to do so as a matter of fact.

\* \* \* \* \* \*

"In the present case, plaintiff claims that the cablegram and letter, although they do not of themselves proclaim that defendant had discharged plaintiff for lack of professional competence, were capable of suggesting to a reasonable reader that defendant had discharged plaintiff for such reason; that it was proper to submit that question to the jury; and that, if the jury found that a reasonable reader could find the words libelous the publication was libelous per se.

"We are unable to approve such a doctrine. It constitutes a contradiction of terms. \* \* \*"

The plaintiffs allege and contend that the letters complained of are libelous per se. They allege no special damages, seeking only general damages in the sum of $1,000,000.00. The Court of Appeals of Georgia in Anderson v. Kennedy, supra said:

"In an action for libel, where the alleged defamatory words are as a matter of law not actionable per se, and where the petition does not set out any proper or legitimate item of special damage, and where it fails to allege by way of innuendo that the words complained of 'convey a covert meaning, wholly different from the ordinary and natural interpretation usually put upon them,' and that the author of the libel intended them to be understood in their covert sense, and that they were in fact so understood by those who read them, the petition does not set out a cause of action and should be dismissed on general demurrer."

The Court of Appeals for the Fifth Circuit in Albert Miller & Co. v. Corte, 107 F.2d 432, 434 (1939) recognized and succinctly stated the respective duties of the court and the jury in libel cases and with clarity set forth the principles to be applied by the court in its construction of the language used in the alleged libel as follows:

"This rule is that it is for the court to determine in the first place, whether the words used, are capable of a defamatory meaning, that is, of being taken as a libel, and for the jury in the second place, to say, whether the words as applied to the plaintiff, were in fact, a libel, that is, whether they were understood and taken in a libelous sense. 'In determining whether the words are capable of a defamatory meaning, the Judge will construe them according to the fair and natural meaning which will be given them by reasonable persons of ordinary intelligence, and will not consider what persons setting themselves to work to deduce some unusual meaning might succeed in extracting from them.'"

**504**

In accordance with the authorities cited, particularly Dun v. Maier et al., supra; Julian v. American Business Consultants, supra, and Becker v. Toulmin, supra, the complaints should be dismissed, the words used being "incapable of the meaning ascribed to them by the innuendo", there being no issue for the jury and the court being unwilling to shirk its duty by creating an issue where none exists.

Accordingly, the motions to dismiss in all four captioned cases is sustained and counsel for defendants may prepare and hand up an order to that effect.