**Bonnie FARRIOR, Plaintiff,**

v.

**H.J. RUSSELL & COMPANY, Defendant.**

**No. Civ.A. 1:98–CV–2644–TWT.**

United States District Court, N.D. Georgia, Atlanta Division.

April 19, 1999.

Jack Dodd, Office of Jack E. Dodd, Gainesville, GA, for Bonnie Farrior, plaintiff.

David Michael Brown, Lisa Lynn Ballentine, Tracie Y. Johnson, Smith Gambrell & Russell, Atlanta, GA, for H.J. Russell & Company, defendant.

## ORDER

THRASH, District Judge.

This case is brought pursuant to 42 U.S.C. §§ 1981 and 1982. Plaintiff also asserts pendant state claims alleging defamation, fraud, intentional infliction of emotional distress, and breach of contract. At issue is the Defendant's termination of Plaintiff as a resident apartment manager and her eviction from her rent-free apartment. The case is before the Court on consideration of Defendant's Motion for Summary Judgment [Doc. No. 1]. For the following reasons, the motion should be granted.

### I. BACKGROUND

Plaintiff Bonnie Farrior is an African–American woman. She was employed with Defendant H.J. Russell & Company, an African–American owned and operated business. Plaintiff worked as an on-premises manager of Lake Forest Apartments, a residential apartment complex owned and operated by Defendant. She was terminated for performing services and accepting compensation from a vendor of Defendant. Such action violates the company's conflict of interest policy. With her termination, Plaintiff lost the apartment in which she lived rent-free as partial compensation for her work as manager.

Plaintiff assumed her position of resident services director of Lake Forest Apartments in Gainesville, Georgia in July, 1996. For compensation she received an hourly salary in addition to her rent-free apartment. In October, 1996, Plaintiff informed her supervisor at H.J. Russell & Co. of alleged improprieties by the former manager of the apartment complex. Plaintiff alleged that her predecessor made payments to a vendor for services not performed. Upon investigation, Defendant learned that Plaintiff had performed services for and received compensation from the same vendor. Such action violated Defendant's conflict of interest policy. Consequently, Plaintiff was terminated on October 11, 1996.

Because her apartment constituted part of her compensation, Defendant required Plaintiff to vacate the unit. Ms. Paulette Baker, an employee of Defendant, traveled to the apartment complex to inform Plaintiff of her termination for violating the company's conflict of interest policy. Plaintiff refused to return the keys to the management office. Plaintiff also threatened to "slam [Ms. Baker's] skinny ass into the wall." [Baker Affid., ¶ 8; Farrior Dep. at 44]. When Plaintiff became abusive, Ms. Baker called the police. When the officer arrived, Ms. Baker said that Plaintiff was terminated because Plaintiff "had received money from a vendor ..." [Farrior Dep. at 44]. When Plaintiff refused to move out of her apartment, Defendant initiated dispossessory proceedings. On November 20, 1996, after conducting a hearing on the matter, a Hall County Magistrate Judge ordered Plaintiff to vacate the apartment.

Subsequently, Plaintiff filed suit in Fulton County Superior Court alleging violations of 42 U.S.C. §§ 1981 and 1982. Plaintiff also asserted claims of defamation, fraud, intentional infliction of emotional distress, and breach of contract.[1] Defendants removed this action to this Court pursuant to 28 U.S.C. § 1441 et seq., based on federal question jurisdiction.

### II. SUMMARY JUDGMENT STANDARD

Summary judgement is appropriate only when the pleadings, depositions and affida-

---

1. Plaintiff initially asserted claims for defamation, fraud, and intentional infliction of emotional distress. Later, Plaintiff amended her Complaint to add federal claims under Sections 1981 and 1982 and added an additional state claim for breach of contract.

vits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgement as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the non movant. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgement must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. *DISCUSSION*

### A. *DEFAMATION*

██ Plaintiff's complaint first asserts a claim for defamation. Specifically, Plaintiff alleges that Ms. Baker accused Plaintiff of stealing money. Plaintiff contends this accusation constituted a defamation in reference to her profession. Under O.C.G.A. § 51–5–4, maliciously making charges against another in reference to his trade or profession constitutes slander per se; damages are thus inferred. Plaintiff's prior position as a residential apartment manager suffices for a trade since Georgia courts have interpreted "trade" to encompass employment by another. *Rogers v. Adams*, 98 Ga.App. 155, 105 S.E.2d 364 (1958).

██ The remarks on which Plaintiff relies, however, are insufficient as a matter of law to constitute defamation. "For a defamatory oral utterance to be slanderous as imputing a crime, the statement must not only be such as may convey to the auditor the impression that the crime in question is being charged, but it must be couched in such language as might reasonably be expected to convey that meaning to any one who happened to hear the utterance." *Anderson v. Fussell*, 75 Ga. App. 866, 869, 44 S.E.2d 694 (1947); *See also Christian v. Ransom*, 52 Ga.App. 218, 219, 183 S.E. 89 (1935) (holding that plain and unambiguous words that do not impute a crime cannot be enlarged and extended by innuendo). The only remarks by Defendant that Plaintiff alleges were defamatory are those Ms. Baker made to the police officer. In response to the police officer questioning why Plaintiff was being terminated, Ms. Baker replied that Plaintiff "had received money from a vendor ..." [Farrior Dep. at 44].

Q: What exactly did Paulette (Ms. Baker) say to you?

A: Well, the police was asking what was going on and, you know, why was I being terminated. And she said that I had been taking money from a vendor.

Q: Did she say that you were stealing? Did she use that word, stealing?

A: Let's see. Taking money from a vendor. No, I don't think she said stealing. But she said taking money from a vendor. So taking, stealing, taking money from a vendor.

\* \* \* \* \* \*

Q: You understood her to mean that you were stealing money from a vendor and not being compensated by the vendor?

A: That's right. Exactly.

[Farrior Dep. at 59].

Ms. Baker's remarks do not fit the above definition of a defamatory utterance because they do not reasonably convey the imputation of theft. Moreover, Ms. Baker denies ever accusing Plaintiff of stealing. Plaintiff's testimony reveals the truth in Ms. Baker's denial.

██ In addition to Ms. Baker never using the word "stealing," Plaintiff admits that she knew her termination ensued not from theft but from unauthorized "moonlighting." Plaintiff testified that Ms. Baker "told me that I was being terminated

because I had received money from ATH Services." [Farrior Dep. at 43]. Ms. Baker had discovered these payments while investigating charges Plaintiff herself raised about her predecessor. As a result of this investigation, Ms. Baker learned that Plaintiff performed cleaning and repairs to an apartment unit for ATH Services for $55.00. Defendant's conflict of interest policy prohibits employees such as Plaintiff from working for and being paid by a vendor of the company without prior approval from Defendant's chief executive officer. Plaintiff signed an acknowledgment of her receipt and understanding of this policy upon her employment with Defendant. In light of these facts, Plaintiff's subjective belief that the phrase "taking money from a vendor" constituted a defamatory accusation of theft is unfounded. Georgia courts will not "hunt for a strained construction [of allegedly defamatory words] in order to hold the words libelous." *Hardboard Machinery Co. v. Coastal Prod. Corp.*, 289 F.Supp. 496, 498 (M.D.Ga.1967).

Plaintiff's argument that Defendant lacks proof of Plaintiff receiving money from the vendor does not mend the flaw in her claim. Assuming Defendant has no evidence of Plaintiff receiving compensation from a vendor, Ms. Baker's remarks still did not accuse Plaintiff of theft. The evidence fails to establish a *prima facie* case that slanderous statements were made. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim of defamation in Count I of her complaint.

Furthermore, the doctrine of *respondeat superior* does not apply in slander cases. A corporation is not liable for the slanderous utterances of an agent acting within the scope of his employment, unless it affirmatively appears that the agent was expressly directed or authorized to slander the plaintiff. *Lepard v. Robb,*

201 Ga.App. 41, 42, 410 S.E.2d 160 (1991); *Chambers v. Gap Stores,* 180 Ga.App. 233, 348 S.E.2d 592 (1986); *Anderson v. Housing Auth. of Atlanta,* 171 Ga.App. 841, 321 S.E.2d 378 (1984). There is no evidence in the record that the Defendant affirmatively authorized or directed Ms. Baker to slander Plaintiff. Defendant is entitled to summary judgment as to the defamation claim on this ground as well.

### B. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In Count III, Plaintiff asserts a claim for intentional infliction of emotional distress. To state such a claim in Georgia, Plaintiff must show (1) conduct that was intentional or reckless; (2) that this conduct was extreme and outrageous; (3) and caused emotional distress (4) that was severe. *Amstadter v. Liberty Healthcare Corp.*, 233 Ga.App. 240, 242–43, 503 S.E.2d 877 (1998). Plaintiff bears a heavy burden in making this claim. Liability attaches only when the alleged conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yarbrough v. SAS Systems, Inc.,* 204 Ga.App. 428, 429, 419 S.E.2d 507 (1992). Whether the conduct alleged meets this standard is a question of law. *Yarbray v. Southern Bell Tel. & Tel. Co.,* 261 Ga. 703, 706, 409 S.E.2d 835 (1991).

Here, the conduct about which Plaintiff complains does not meet the requisite level of outrageousness. Plaintiff claims her emotional distress resulted from her "being terminated so quickly." [Farrior Dep. at 64; Complaint, ¶ 18]. At the time of her termination, the Plaintiff was an at will employee [2]. Under Georgia law, "[t]he employer, with or without cause and regardless of its motives may dis-

---

2. Plaintiff offers no evidence of any employment contract to refute Defendant's contention that Plaintiff worked as an at will employee. Under Georgia law, an employer-employee relationship without explicit terms and conditions setting the duration of that

relationship is deemed to be "at will." *Gale v. Hayes Microcomputer Prod., Inc.,* 192 Ga. App. 30, 383 S.E.2d 590 (1989). The Court finds Plaintiff was an at will employee of Defendant.

charge the [at will] employee without liability." *Troy v. Interfinancial,* 171 Ga. App. 763, 766, 320 S.E.2d 872 (1984). While illegal discrimination—if proved—may provide federal remedies, Georgia law offers no relief for discriminatory termination through this particular tort. "[D]ischarge from an established position, even for improper reasons, does not constitute the egregious kind of conduct on which a claim of intentional infliction of emotional distress can be based." *Beck v. Interstate Brands Corp.,* 953 F.2d 1275, 1276 (11th Cir.1992) (*citing with approval Suber v. Bulloch Cty. Bd. of Educ.,* 722 F.Supp. 736 (S.D.Ga.1989) (granting summary judgment on intentional infliction of emotional distress claim based on alleged discriminatory non-renewal of teaching contract)). The Court will therefore grant summary judgment as to count III of Plaintiff's complaint.

## C. SECTION 1981

In Count V[3] of the Amended Complaint, Plaintiff asserts a claim pursuant to 42 U.S.C. § 1981. Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens...." 42 U.S.C. § 1981(a). Plaintiff alleges that Defendant discriminated against her because of her race by failing to discipline white employees who also violated the company's conflict of interest policy. "Because Title VII applies only to employers with 15 or more employees,[4] Section 1981 provides the only refuge under federal law from race-based employment discrimination by those who hire fewer than 15 employees." *Fadeyi v. Planned Parenthood Assoc. of Lubbock, Inc.,* 160 F.3d 1048, 1049 (5th Cir.1998).

Defendant argues that Section 1981 does not protect Plaintiff because she was an at will employee. According to Defendant, the lack of an employment contract pre-

cludes Section 1981 liability. This issue has not yet been addressed by the Eleventh Circuit. Of the courts which have considered the issue, at least one circuit has indicated in *dicta* that Section 1981 requires a written contract. *See Gonzalez v. Ingersoll Mill. Mach. Co.,* 133 F.3d 1025, 1033–1035 (7th Cir.1998) (stating that "[b]y its terms, § 1981 governs contractual relationships ... and, in order to bring a § 1981 claim, there must at least be a contract."); *see also Moorer v. Grumman Aerospace Corp.,* 964 F.Supp. 665 (E.D.N.Y.1997); *Moscowitz v. Brown,* 850 F.Supp. 1185 (S.D.N.Y.1994). Other courts have found, based primarily on state law, that at will employment involves a contractual relationship sufficient to sustain a Section 1981 claim. *See Fadeyi,* 160 F.3d at 1051–52; *Spriggs v. Diamond Auto Glass,* 165 F.3d 1015, 1999 WL 34938 (4th Cir.). These courts have held that the contractual nature of at will employment falls within the definition of "contract" in Section 1981. Considering the rights at stake, and the effort by Congress to protect them, the Court concludes that the better view allows the Plaintiff opportunity to make her case under Section 1981.

A brief review of recent Section 1981 history will aid this discussion. In *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Supreme Court held that Section 1981 covered "only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." *Id.* at 179, 109 S.Ct. 2363. Based on this view, the Court found that Section 1981 did not cover discrimination by an employer after the employee began working. *Id.* at 178, 109 S.Ct. 2363. Responding to *Patterson,* Congress passed the Civil Rights Act of 1991 which amended Section 1981. The changes broadened the definition of the phrase "make and enforce contracts" by including "the making, performance, modi-

---

**3.** Conclusory allegations in plaintiff's complaint entitled as Count IV do not state a claim for which relief can be granted.

**4.** *See* 42 U.S.C. § 2000e(b).

fication, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *See* 42 U.S.C. § 1981(b). Relying on this language, some courts have allowed at will employees to assert claims under Section 1981.

In *Fadeyi, supra,* the Fifth Circuit undertook a thorough analysis of this issue. Like the facts here, *Fadeyi* involved an African–American at will employee. After her employer fired her, the plaintiff sued under Section 1981 alleging racial discrimination. The district court granted summary judgment for the defendant-employer because of the plaintiff's inability to show the existence of a contract. On appeal, the Fifth Circuit considered whether Section 1981 requires a written employment contract. In addition to considering the amended language of Section 1981, the Fifth Circuit applied Texas law to discern the nature of the contract between at will employees and their employers. In Texas, as in many other states, the employer may terminate an employee for "good cause, bad cause, or no cause at all" absent a specific agreement to the contrary. *Fadeyi*, 160 F.3d at 1049. Nevertheless, Texas law recognizes that an at will employment relationship is a contract. *Id.* at 1050. Because the applicable state law "firmly support[ed] the contractual nature of an at-will employment relationship," the Fifth Circuit reversed, holding that an at will employee cannot be fired for an illegal cause. *Id.* at 1050–52.

The Fifth Circuit based its conclusion partly on the Supreme Court's implicit recognition of an at will employee's right to sue under Section 1981. In *Patterson, supra,* the Court declined to recognize work place racial harassment as actionable under Section 1981.[5] But, the Court acknowledged that the at will employee might have a claim based on the employer's failure to promote her based on her race. The Court wrote that "the question whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter a *new* contract with the employer. If so, then the employer's refusal to enter the new contract is actionable under § 1981." *Patterson*, 491 U.S. at 185, 109 S.Ct. 2363 (emphasis added). The Fifth Circuit concluded that this language "leaves no doubt" that the Court considered the relationship between at will employees and employers to be contractual. *Fadeyi*, 160 F.3d at 1050. There could be no "new contract" without a previous one. *Id.*

The Court finds this reasoning persuasive. While many employees work for employers without any written memorialization of their relationship, the on-going exchange of labor and pay represents their contract. This view finds support in Georgia law. It is well-established that "even though a person's employment contract is at will he has a valuable contract right ...." *Troy v. Interfinancial, Inc.*, 171 Ga. App. 763, 766, 320 S.E.2d 872 (1984) (recognizing at will employee's right to sue third party for tortious interference with contractual relations). The at will employee can enforce this contract, even if oral, for due compensation based on the work actually performed. *E.D. Lacey Mills, Inc. v. Keith*, 183 Ga.App. 357, 359, 359 S.E.2d 148 (1987). That either party can end the relationship at any time does not diminish the contractual nature of their bargain.

Public policy also supports interpreting Section 1981 to protect these employees. "To hold that at-will employees have no right of action under § 1981 would effectively eviscerate the very protection that Congress expressly intended to install for minority employees, especially those who, by virtue of working for small businesses, are not protected by Title VII." *Fadeyi*, 160 F.3d at 1050. Excluding from

---

**5.** As stated above, Congress legislatively overruled the Court by adding subsection (b) to Section 1981.

federal court those who most need its protection is unacceptable. The Court does not believe that Congress intended to provide the remedial balm of Section 1981 only to assuage the discrimination suffered by those minorities able to secure written contracts. Neither the statute's language nor its legislative history support this view. The Court holds that at will employees can assert claims of racial discrimination under Section 1981.

Despite the protections offered by this statute, Ms. Farrior has failed to present substantial evidence that Defendant discriminated against her. To establish her claim under Section 1981, Plaintiff must satisfy the same substantive analysis applicable to race discrimination cases under Title VII. *Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1060 (11th Cir.1994). A Title VII and Section 1981 plaintiff may prove her race discrimination claims in two ways. She may offer direct evidence of discrimination or produce circumstantial evidence. Ms. Farrior offers no direct evidence of discrimination.[6] This is not surprising given the fact that Defendant is an African–American owned business.

Because Plaintiff's case relies on circumstantial evidence, she must navigate the shifting burden analysis from *McDonnell Douglas* and its progeny to keep her claim afloat. *Id. citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, the initial burden rests on the plaintiff to establish, by a preponderance of the evidence, a *prima facie* case of discrimination. *Id.* To establish a claim for discriminatory discharge, the plaintiff must show that (1) she is a member of a protected minority; (2) she was qualified for the position from which she was discharged; (3) she was discharged; (4) and that she was replaced by a non-minority or that her employer treated similarly situated employees of other races more favorably.

*Jones v. Bessemer Carraway Medical Center,* 137 F.3d 1306, 1310–11 (11th Cir. 1998); *Edwards v. Wallace Community College,* 49 F.3d 1517, 1521 (11th Cir.1995) *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1185 (11th Cir.1984). Failure to establish a single element of a *prima facie* case entitles a defendant to summary judgment. *Pace v. Southern Ry. Sys.,* 701 F.2d 1383, 1391 (11th Cir.1983), *cert. denied,* 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983).

Here, Plaintiff has failed to establish a *prima facie* case as to the fourth element. Plaintiff offers no evidence as to the race of her replacement. In her Affidavit, Plaintiff stated in conclusory fashion that two white employees were not disciplined in any way for accepting money from the same vendor. As to Tim Rudiseal, Plaintiff offers no facts that would allow a meaningful comparison between his conduct and that of Plaintiff. As to Roger Waldrop, Plaintiff's deposition testimony was that he was terminated just as Plaintiff was terminated. Both filed grievances. Waldrop was reinstated after the company found that he had worked for the vendor at the express direction of Plaintiff, his direct supervisor. In the proceedings on the Plaintiff's grievance, the company learned that the Plaintiff had paid the vendor for services not yet rendered and that certain services may have been double billed. In addition, it was discovered that Plaintiff had not transferred the utilities in her apartment into her name. Finally, it is undisputed that Plaintiff threatened her supervisor and refused to give the office keys to her until the police were called. Plaintiff has failed to show that she and Roger Waldrop were similarly situated but treated differently. Therefore, she has failed to make out a *prima facie* case of discrimination.

---

**6.** Direct evidence is evidence that, if believed, proves the existence of discrimination "without inference or presumption." *Carter v. Three Springs Residential Treatment,* 132 F.3d 635, 641 (11th Cir.1998). It is evidence not subject to varying reasonable interpretations. *Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1189–90 (11th Cir.1997).

## D. SECTION 1982

 Plaintiff raises in Count VI a claim under 42 U.S.C. § 1982.˙ Section 1982 guarantees that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold and convey real and personal property." 42 U.S.C. § 1982. Unlike 42 U.S.C. § 1983 which requires state action, Section 1982 also applies to private actors. *Terry Properties, Inc. v. Standard Oil Co. (Ind.)*, 799 F.2d 1523, 1534 (11th Cir.1986) *citing Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). Section 1982, however, applies only to cases of racial discrimination. *Lee v. Minnock*, 417 F.Supp. 436, 439 (D.C.Pa.1976) *citing Jones v. Alfred H. Mayer Co., supra; See also Arnold v. Tiffany*, 359 F.Supp. 1034 (C.D.Cal.), *aff'd* 487 F.2d 216 (9th Cir.1973), *cert. denied* 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1974). Importantly, Section 1982 does not expressly authorize a federal court to order the payment of damages. *Jones v. Alfred H. Mayer Co.*, 392 U.S. at 414, 88 S.Ct. 2186.

 Section 1982 is also unlike Section 1983 in the relatively few cases discussing its application. "[T]he full scope of § 1982 has never been made clear...." *Jackson v. Okaloosa County*, 21 F.3d 1531, 1538–41 (11th Cir.1994). Likewise, the Eleventh Circuit has not addressed fully what one must prove to recover under this statute. Some courts in other circuits, and at least one district court in this circuit, have applied the *McDonnell Douglas* burden shifting analysis to analyze a Section 1982 claim. *E.g., Bell v. Mike Ford Realty Co.*, 857 F.Supp. 1550 (S.D.Ala.1994); *Houston v. Benttree, Ltd.*, 637 F.2d 739 (10th Cir. 1980), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2018, 68 L.Ed.2d 325 (1981). This tripartite test from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a Title VII employment-discrimination case, governs in cases arising under the Fair Housing Act. *Secretary, United States Dept. of Hous. and Urban Dev. on behalf of Herron v. Blackwell*, 908 F.2d 864, 870 (11th Cir.1990). Comparing the Fair Housing Act and Section 1982, the Eleventh Circuit has noted that "no substantial difference between [these two provisions] is readily apparent...." *Jackson v. Okaloosa County*, 21 F.3d 1531, 1543 (11th Cir.1994). Indeed, Section 1982 case law makes little distinction between the requirements to state a claim under Section 1982 and Section 804 of the Fair Housing Act. *Id. citing NAACP v. American Family Mut. Ins. Co.*, 978 F.2d 287 (7th Cir.1992); *Jaimes v. Toledo Metro. Hous. Auth.*, 758 F.2d 1086 (6th Cir.1985). One difference between the two is that plaintiffs making claims under Section 1982 have been required to allege the occurrence of intentional discrimination. *Id. citing Village of Arlington Heights*, 429 U.S. 252, 265–66, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). The Court finds the *McDonnell Douglas* analysis to be a workable solution in Section 1982 claims. Thus, Plaintiff must again satisfy the shifting burdens.

 Plaintiff alleges that Defendant violated Section 1982 because her termination—which she alleges was discriminatory—resulted in her eviction from her apartment. To state a claim under Section 1982, a plaintiff must establish a *prima facie* case of discrimination by a preponderance of the evidence. *Bell*, 857 F.Supp. at 1557. A *prima facie* case requires a showing by Plaintiff that (1) she is a member of a racial minority; (2) she applied for and was qualified to rent or purchase certain property or housing; (3) was rejected; and (4) that the housing or rental unit remained available after her denial. *Id.; see also Phiffer v. Proud Parrot Motor Hotel*, 648 F.2d 548 (9th Cir.1980); *Harper v. Hutton*, 594 F.2d 1091 (6th Cir.1979). Further, in the Eleventh Circuit a plaintiff must also show that the defendant intentionally discriminated against a plaintiff's race in rejecting a qualified offer. *Bell*, 857 F.Supp. at 1557–58, *citing Terry Prop-*

*erties, Inc. v. Standard Oil Co.,* 799 F.2d 1523, 1534 (11th Cir.1986).

■ Here, Plaintiff has not established a *prima facie* case. She has established the first element in that she is an African–American. She also has established the third element; her rejection took the form of an eviction from the rental unit. What Plaintiff has not established is whether she applied for and was qualified to rent the unit. Plaintiff wanted to remain in the apartment rent free. She has not shown that she applied to rent the apartment. Plaintiff also has not shown that the unit remained available to others after her offer was declined. She has not shown that white managers who were terminated were allowed to keep rent-free apartments. Because Plaintiff has failed to establish her *prima facie* case, summary judgment is appropriate for Defendant.

### E. FRAUD & BREACH OF CONTRACT

■ In Counts II and VII, Plaintiff asserts causes of action for fraud and breach of contract, respectively. Both claims arise from the same subject matter considered in the dispossessory action in magistrate court.[7] Consequently, the dispossessory action to remove Plaintiff from the apartment was *res judicata* barring subsequent action against Defendant on these issues. Georgia law provides:

> A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside.

O.C.G.A. § 9–12–40 (1998). Here, the magistrate court was one of competent jurisdiction to determine the validity of the lease agreement. Georgia magistrate courts have jurisdiction over all civil claims in which the superior court is not vested with exclusive jurisdiction. O.C.G.A. § 15–10–2(5); *see also Brinson v. First Am. Bank of Ga.,* 200 Ga.App. 552, 555, 409 S.E.2d 50 (1991). Thus, any claims for fraud, along with any claims for breach of a rental agreement, should have been raised in magistrate court. "[F]or *res judicata* purposes it is a matter which under the rules of law could have been put in issue." *Id.* Plaintiff admits that Defendant gave her the same notice and proceeded with the same eviction procedures that it utilized for all tenants. The undisputed evidence is that the issue of Plaintiff's dispossession from the apartment has been previously litigated and conclusively decided. Plaintiff is not entitled to any relief from her dispossession from the apartment.

Accordingly, Defendant is entitled to summary judgment on Counts II and VII of Plaintiff's complaint.

### IV. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant's Motion for Summary Judgment [Doc. No. 1].

SO ORDERED.

---

7. The alleged fraud occurred when Defendant allegedly forged Plaintiff's signature on a lease agreement. Defendant relied on this lease agreement in the dispossessory proceeding in magistrate court to evict Plaintiff from the apartment. The parties appeared in Hall County Magistrate Court in November 1996, in the matter of *H.J. Russell & Co. d/b/a Lake Forest Apartments v. Bonnie Farrior,* Civil Action No. MV–96045984E. Plaintiff acknowledges that the lease agreement was presented as evidence during the dispossessory proceeding. [Farrior Dep. at 55]. Following a hearing, the court ordered Plaintiff to vacate the apartment.