## 10213

### STATE v. BETHUNE.

#### (99 S. E. 753.)

1. CRIMINAL LAW—QUESTION FOR JURY—CONFLICTING EVIDENCE.—Testimony on issue whether defendant was guilty being conflicting, the issue was properly submitted to the jury.

2. HOMICIDE—CONFUSED INSTRUCTIONS—SELF-DEFENSE.—In prosecution for murder, that Court confused the law of self-defense with the law of preserving one's liberty against unlawful arrest *held* to require reversal.

3. HOMICIDE—REGAINING POSSESSION OF PROPERTY.—One who is wrongfully deprived of his property has the right to repossess himself without taking legal steps, provided he can do so without committing a breach of the peace.

4 HOMICIDE — RESISTING UNLAWFUL ARREST—NECESSITY OF HOMICIDE.— One has the right to defend himself from an unlawful arrest, and for the purpose of so protecting himself may use whatever force is necessary, even to the extent of taking the life of him who is seeking to make the unlawful arrest, if that be apparently necessary to a man of ordinary courage in the circumstances.

5. HOMICIDE — SELF-DEFENSE. — To make out a case of self-defense, accused must have actually believed that he was in such immediate danger of losing his life or sustaining serious bodily harm that it was necessary for his own protection to take the life of his assailant, and the circumstances in which accused was placed must have been such as would justify such a belief in the mind of a person possessed oᶠ ordinary firmness and reason.

Before PRINCE,·J., Lee, Fall term, 1916. Reversed.

Willie Bethune was convicted of murder, and appeals. See, also, 104 S. C. 353, 89 S. E. 153.

*Messrs. John H. Clifton* and *H. D. Moise,* for appellant, submit: *The record does not disclose any evidence of murder, and it was error to refuse to direct a verdict in favor of defendant, in so far as the charge of murder was laid against him:* 30 S. C. 74; 72 S. C. 110. *There is no analogy between the case of State v. Emerson, 78 S. C., p. 95, and the case at bar. It was error to permit the Solicitor to read to the jury, over defendant's objection, the facts and circumstances in the case of State v. Emerson, 78 S. C. 83:* 103 S. C. 280; 105 S. C. 59; 86 S. C. 374. *The attempt of Mims, the deceased, to arrest the defendant on Sunday without a warrant, was in violation of the common law, and of the statute law of this State:* Code of 1912, vol. I, sec. 1173. *There being no evidence on the part of the State that the attempted arrest of the defendant by the deceased was legal, the crime of murder was not made out:* 105 S. C. 259. *It was the duty of the Court to charge the law, and to charge without error, and so far as the jury is concerned, without the hope of correction of error:* 109 S. C. 117.

*Solicitor Frank A. McLeod,* for the State, submits: *That when a part of a conversation has been offered in evidence the whole of it may be proved in reply:* 28 S. C. 29; 4 S. E. 799. *A Circuit Judge may correct clerical errors made in recording his judicial utterances:* 21 S. C. 11.

June 23, 1919.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The defendant was indicted for the murder of G. B. Mims. The jury rendered a verdict of guilty, and he was sentenced to be electrocuted. There were several former appeals in this case, and the report of the case in 86 S. C. 143, 67 S. E. 466, states the circumstances out of which the homicide arose. The defendant has appealed

upon several exceptions; and the first question that will be
considered is whether there was error on the part of his
Honor, the presiding Judge, in refusing the appellant's
motion for the direction of a verdict as to murder on the
ground that there was no testimony tending to show that the
defendant was guilty of that crime.    The testimony upon
this issue was conflicting, and it was properly submitted to
the jury.    The next question is presented by the following
exception:

"It is respectfully submitted that his Honor has confused
the law of self-defense with the law of preserving one's
liberty against arrest, in that one unlawfully attempted to be
arrested is not bound to retreat or seek or embrace a way
to escape, but may stand his ground and use such force as
may be necessary to repel an unlawful arrest or detention or
interference with his person, and a person seeking to arrest
or detain another person must show a clear, legal right to do
so, and that such right of resistance is not based upon the
necessity as understood in the law of self-defense."

His Honor, the presiding Judge, thus instructed the jury
in his general charge:

"A private individual even has the right to arrest without
a warrant for a felony, but he has no such right to arrest for
a misdemeanor.    I charge you, gentlemen, that in this State
the use of a man's horse and buggy without his permission
is a misdemeanor under the statutes of South Carolina, and
under that statute no officer has a right to arrest for an
offense not committed in his presence, and a private citizen
has no right to arrest any one.    Where one is wrongfully
in possession of another's property, the owner of the prop-
erty has a right to repossess himself of his property without
taking legal steps, provided he can do so without committing
a breach of the peace. * * * But one has no right to com-
mit a breach of the peace in order to get possession of his
own property, and if there is any probability of a breach of
the peace, he must swear out a warrant and get an officer

to execute it.   I charge you that a man has the right to
defend himself from an unlawful arrest, and for the purpose
of so protecting himself he has the right to use whatever
force is necessary, even to the taking of life, the life of him
who is seeking to make the unlawful arrest, if that be appar-
ently necessary, and if it would have been apparently neces-
sary to a man of ordinary courage in the circumstances.   I
charge you that, where one is defending his person from an
unlawful arrest, he had the right to use just so much force
as is apparently necessary to accomplish his deliverance and
no more.   He has not the right to use excessive force unless
excessive force not only be apparently necessary to him, but
would have been to a man of ordinary courage so situated.
If the defendant used excessive force in order to prevent an
unlawful arrest of his person, and did it in sudden heat and
passion, and not because of any preformed purpose, he would
only be guilty of manslaughter."

After the general charge to the jury the record shows that
the following took place:

"Does counsel for the State desire any additional
charge?   Mr. Stoll: No, sir.   Does counsel for the defend-
ant desire anything additional?   Mr. Clifton: Yes, sir; we
think under the facts in the case that it is analogous to an
unlawful arrest, and he is entitled to have the jury charged
in this case that, if the deceased attempted by force, or by
show of force, or by any means that amounted in law to
assault, to detain, that the law would have permitted him
to use such force as was necessary to avoid such detention,
such forced detention, and if he acted on that show of force
that would amount in law to sufficient legal provocation, and
would at least confine the killing to manslaughter.   The
Court: I will charge that, provided that the necessity was
such as would have been apparent to a man of ordinary
courage so situated.   I tell you that in addition to what he
told you.   Now, if it appeared to him it must have been such
to warrant action in self-defense, must have been such as

would have been apparently necessary to a man of ordinary courage so circumstanced. But if it were not, and he could not plead self-defense, it would reduce the killing from murder to manslaughter, unless the killing was pursuant to a preformed purpose, previous preparation, preformed intention. In that event it would be murder."

There was no testimony whatever tending to show that the homicide resulted from a refusal on the part of the defendant to allow the deceased to regain possession of his property. On the contrary, the conduct of the defendant tended to show that he was anxious to abandon the possession of the property and to make his escape. There was testimony to the effect that when the deceased met the defendant he commanded the girls to get out of the buggy, which they did, but that he cursed the defendant and commanded him to keep his seat, when he was about to get out, thus indicating an intention on the part of the deceased to arrest the defendant and carry him in the buggy by force to some other place.

In that portion of the general charge which we have quoted his Honor, the Circuit Judge, correctly stated the law, both as to the rights of the deceased in regaining possession of his property and the rights of the defendant growing out of an apparently unlawful arrest. The right of a person to resist an unlawful arrest, even to the extent of taking the life of the aggressor, if it be necessary, in order to regain his liberty, is sustained by the following authorities: *State v. Wimbush,* 9 S. C. 309; *State v. Sims,* 16 S. C. 486; *State v. Brown,* 17 S. C. 58; *Davis v. Sanders,* 40 S. C. 507, 19 S. E. 138; *State v. Higgins,* 51 S. C. 51, 28 S. E. 15, 38 L. R. A. 561; *Florence v. Berry,* 61 S. C. 237, 39 S. E. 389; *Percival v. Bailey,* 70 S. C. 72, 49 S. E. 7; *State v. Griffin,* 74 S. C. 412, 54 S. E. 603; *State v. Franklin,* 80 S. C. 332, 60 S. E. 953; *Town of Branchville v. Felder,* 86 S. C. 280, 68 S. E. 575; *State v. Seigler,* 94 S.

C. 117, 77 S.. E. 731; *Safren v. Meyer,* 103 S. C. 356, 88 .
S. E. 3; *State v. Shaw,* 104 S. C. 359, 89 S. E. 322.

The principle announced by the Circuit Judge in the portion of the general charge which we have quoted, and the ruling which he made after inquiring of defendant's attorney whether he desired any additional charge, cannot be reconciled, for the reason that the right to resist an unlawful arrest and the right of self-defense are fundamentally separate and distinct. To make out a case of self-defense two things are necessary: (1) The evidence should satisfy the jury that the accused actually believed that he was in such immediate danger of losing his life, or sustaining serious bodily harm, that it was necessary for his own protection to take the life of his assailant; (2) that the circumstances in which the accused is placed were such as would, in the opinion of the jury, justify such a belief in the mind of a person possessed of ordinary firmness and reason. These are not the prerequisites of a person's right to resist an unlawful arrest, which he may exercise even to the extent of taking the life of another, if it be necessary, in order for him to regain his freedom.

The error was prejudicial to the rights of the appellant, and he is entitled to a new trial. The appellant's attorney has failed to satisfy this Court that the other errors assigned were prejudicial to the rights of the appellant.

Reversed.

MESSRS. JUSTICES HYDRICK and WATTS concur.

MR. JUSTICE GAGE disqualified.

MR. JUSTICE FRASER did not sit.