557 S.E.2d 657

**The STATE, Respondent,**

v.

**Robert G. McGOWAN, Jr., Petitioner.**

No. 25389.

Supreme Court of South Carolina.

Heard Sept. 27, 2001.

Decided Dec. 17, 2001.

Deputy Chief Attorney Joseph L. Savitz, III, South Carolina Office of Appellate Defense, of Columbia, for petitioner.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Robert E. Bogan, Senior Assistant Attorney General Harold M. Coombs, Jr. all of Columbia, and Solicitor John Gregory Hembree, of Conway, for respondent.

Justice WALLER.

We granted a writ of certiorari to review the Court of Appeals' unpublished opinion in *State v. McGowan*, Op. No. 99–UP–626 (S.C. Ct.App. filed Dec. 9, 1999). We affirm in result.

## FACTS

McGowan was convicted of assault and battery with intent to kill (ABIK) and resisting arrest with a deadly weapon. The charges stem from police attempts to arrest McGowan for "disorderly conduct." According to the State's version of the evidence,[1] at approximately 1:00 a.m. on the morning of September 7, 1996, McGowan, who was intoxicated, called police

---

1. We view the evidence, as we must, in the light most favorable to the State. *State v. Burdette*, 335 S.C. 34, 515 S.E.2d 525 (1999) (in reviewing denial of a motion for directed verdict, the evidence must be viewed in light most favorable to the State).

to his home in the Socastee area of Myrtle Beach in order to file a false complaint.[2] Officer James Mills arrived to find McGowan waiting in his driveway. McGowan became loud and boisterous, and began using profanity toward Officer Mills and other officers on the scene. At one point, McGowan retrieved a pistol from his home, which police took from him. When McGowan began "ranting and raving" for the third or fourth time, Mills decided to arrest him for disorderly conduct. Mills advised McGowan to place his hands on the police car, but when Mills went to cuff him, McGowan ran toward his house. Mills chased him, catching him by the ponytail at the front door, and both fell into the living room. McGowan kicked Mills in the groin, then ran to a bedroom where he retrieved a shotgun. Mills' attempt to subdue McGowan with mace was unsuccessful. McGowan pointed the shotgun at Mills, and Mills fired a warning shot with his pistol. McGowan shot at Mills, hitting him in the hand; Mills fired another shot, grazing McGowan, at which point he surrendered. McGowan was thereafter tried and convicted of ABIK and resisting arrest with a deadly weapon. The Court of Appeals affirmed.

## ISSUES

1. Was McGowan entitled to a directed verdict on the charges of ABIK?

2. Was McGowan entitled to a directed verdict on the charge of resisting arrest with deadly force on the ground that the underlying arrest for disorderly conduct was unlawful?

## 1. DIRECTED VERDICT/ABIK

McGowan claims his underlying arrest for disorderly conduct was unlawful. Therefore, he contends, he was entitled to use deadly force to resist an unlawful arrest, entitling him to a directed verdict on the charge of ABIK. We disagree; even

---

2. A short time earlier, McGowan had gotten into a fight at a bar with a man named Howard Peel. Upon leaving the bar, McGowan pushed Peel's pickup truck into a ditch with his white Ford Bronco. Police were called to the bar, where they took an incident report concerning the altercation. McGowan called police to his home to falsely report that Peel had come to his home and assaulted him there.

assuming *arguendo* the threatened arrest was unlawful,[3] we find the ABIK charge was properly submitted to the jury.

In reviewing the denial of a motion for a directed verdict, the evidence must be viewed in the light most favorable to the State. *State v. Kelsey*, 331 S.C. 50, 502 S.E.2d 63 (1998). If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, an appellate court must find that the case was properly submitted to the jury. *State v. Rowell*, 326 S.C. 313, 315, 487 S.E.2d 185, 186 (1997). Although the trial court should not refuse to grant the motion where the evidence merely raises a suspicion of the accused's guilt, the case must be submitted to the jury if substantial evidence which reasonably tends to prove the guilt of the accused, or from which his guilt can be fairly and logically deduced, exists. *Id.*

This Court has previously recognized that a person has a right to resist an unlawful arrest even to the extent of taking the life of the aggressor if it be necessary in order to regain his liberty. *State v. Poinsett*, 250 S.C. 293, 157 S.E.2d 570 (1967); *State v. Bethune*, 112 S.C. 100, 99 S.E. 753 (1919); *State v. Robertson*, 191 S.C. 509, 5 S.E.2d 285 (1939). However, the cases do not stand for the blanket proposition that one may, in every instance, resist an unlawful arrest to the point of deadly force without fear of repercussion. To the contrary, the cases clearly reveal that only such force as is reasonably necessary under the circumstances may be invoked.

In *State v. Bethune, supra*, we upheld the following charge concerning the right to resist an unlawful arrest:

I charge you that a man has the right to defend himself from an unlawful arrest, and for the purpose of so protecting himself he has the right to use whatever force is necessary, even to the taking of life, the life of him who is seeking to make the unlawful arrest, if that be apparently necessary, and if it would have been apparently necessary to a man of ordinary courage in the circumstances. I charge you that, **where one is defending his person from an unlawful arrest, he had the right to use just so much force as is apparently necessary to accomplish his deliv-**

---

3. As discussed in Issue 2 below, whether the arrest was lawful was properly submitted to the jury.

erance and no more. He has not the right to use excessive force unless excessive force not only be apparently necessary to him, but would have been to a man of ordinary courage so situated.

112 S.C. at 101, 99 S.E. at 753. (Emphasis supplied). Thereafter, in *State v. Francis,* 152 S.C. 17, 34–39, 149 S.E. 348, 355–356 (1929), this Court stated:

An unlawful arrest, or an attempt to make an unlawful arrest, stands upon the same footing as any other nonfelonious assault, or as a common assault and battery. The person who is so unlawfully arrested, or against whom such an unlawful attempt is directed, is not bound to yield, and **may resist force with force, but he is not authorized to go beyond the line of force proportioned to the character of the assault,** or he in turn becomes a wrongdoer....

A mere trespass on one's person or liberty is no reason for the taking of life, and if one commits a homicide while resisting an arrest, even though it is unlawful, he cannot justify on the ground of self-defense unless he can show that the killing was apparently necessary to protect himself from death or great bodily harm....

**But such person should use no more force than is necessary to resist the unlawful arrest, and is justified in using or offering to use a deadly weapon only where he has reason to apprehend an injury greater than the mere unlawful arrest,** as danger of death or great bodily harm....

**It not infrequently has been reasoned that an unlawful attempt to restrain a person's liberty is such an aggression as to furnish a complete excuse for slaying the aggressor. The contention, however, has met with little or no favor in the eyes of the courts. On the contrary, it is generally held that the slayer is not excused unless he can show that the homicidal act was done in his necessary defense. While there can be no doubt of the right of the citizen to resist an attempt illegally to restrain his freedom, yet his resistance must not be in enormous disproportion to the injury threatened. He has no right, according to the better view, to take human life to prevent a mere trespass upon his person or liberty, when unaccompanied by any imminent danger of great bodily harm or felony.**

(Emphasis supplied; internal citations omitted). The *Francis* court held the issue was for the jury. *Id.*

■ Clearly, *Bethune* and *Francis* stand for the proposition that a defendant has the right to resist an arrest to the point of deadly force only if **necessary,** and may not use force disproportionate to the injury threatened.

■ Here, although there was conflicting evidence as to who first responded with deadly force, Officer Mills testified that McGowan first kicked him in the groin, then ran to his room and pulled a shotgun. Only then did Mills spray him with mace and pull his own gun. Mills also testified that he warned McGowan not to point the shotgun at him or he would shoot him; only when McGowan pointed the shotgun at him did Mills fire his weapon. Given this testimony, and viewing the evidence in the light most favorable to the state, whether or not McGowan's response was proportional to the threatened arrest was a matter for the jury. Accordingly, the issue of ABIK was properly submitted to the jury.[4]

## 2. DIRECTED VERDICT/RESISTING ARREST

McGowan also contends his arrest for disorderly conduct was unlawful, thereby entitling him to a directed verdict on the charge of resisting arrest with deadly force. We disagree.

■ Pursuant to S.C.Code Ann. § 16–3–625 (Supp.2000), a person who resists the **lawful** efforts of a law enforcement officer to arrest him with the use or threat of use of a deadly weapon is guilty of a felony. Accordingly, a person may not be convicted of resisting arrest with a deadly weapon where the underlying arrest is unlawful.[5]

S.C.Code Ann. 16–17–530 (2000) provides, in part:

---

4. The trial judge stated on two occasions that he would charge the jury that a defendant has the right to resist an unlawful arrest, even to the point of using deadly force. Although the jury charge is not contained in the record, we assume the jury was so charged. *State v. Hutto,* 279 S.C. 131, 303 S.E.2d 90 (1983) (appellant has burden of presenting adequate record which is sufficiently complete to permit this Court's review).

5. As noted in Issue 1, however, a person may nonetheless be convicted of other offenses, such as ABIK, ABHAN or murder, if the underlying

Any person who shall (a) be found on any highway or **at any public place or public gathering in a grossly intoxicated condition or otherwise conducting himself in a disorderly or boisterous manner,** [or] (b) **use obscene or profane language on any highway or at any public place** or gathering or in hearing distance of any schoolhouse or church ..., shall be deemed guilty of a misdemeanor and upon conviction shall be fined not more than one hundred dollars or be imprisoned for not more than thirty days. (Emphasis supplied).

In *State v. Williams,* 280 S.C. 305, 306–7, 312 S.E.2d 555, 556 (1984), we adopted the following definition of "public place":

A place to which the general public has a right to resort; not necessarily a place devoted solely to the uses of the public, but a place which is in point of fact public rather than private, a place visited by many persons and usually accessible to the neighboring public. *People v. Whitman,* 178 A.D. 193, 165 N.Y.S. 148, 149. *Roach v. Eugene,* 23 Or. 376, 31 P. 825. **Any place so situated that what passes there can be seen by any considerable number of persons, if they happen to look.** Steph.Cr.L. 115. Also, a place in which the public has an interest as affecting the safety, health, morals, and welfare of the community. A place exposed to the public, and where the public gather together or pass to and for. *Lewis v. Commonwealth,* 197 Ky. 449, 247 S.W. 749, 750.[6]

Emphasis supplied.

■ Here, there is testimony that McGowan was intoxicated, was acting in a loud and boisterous manner and cursing at

---

arrest is unlawful and the degree of force used to resist is disproportionate to the threat.

**6.** In *Town of Springdale v. Butler,* 299 S.C. 276, 384 S.E.2d 697 (1989), we held the fact that the defendant was on his private property did not preclude his conviction for disorderly conduct under a town ordinance which did not require the incident occur in a public area. Although *Butler* could be viewed as an indication that a person's yard or driveway is not a public place, the definition of a public place was not an issue in *Butler,* and there was no need for this Court to determine whether or not Butler's driveway could, under any circumstances, be considered a public place. Accordingly, *Butler* is not dispositive.

police, that his language was loud enough to disturb the neighborhood, and that at some point during the incident, there was a car load of teenagers on the cul-de-sac across the street. Under our definition of "public place" as stated in *Williams*, we find this is sufficient evidence from which the jury could find, for purposes of the disorderly conduct statute, that McGowan was conducting himself in a grossly intoxicated and disorderly manner in a public place. *Accord State v. Locklair*, 341 S.C. 352, 535 S.E.2d 420 (2000) (statutory aggravating circumstance of "great risk of danger" to more than one person in public place properly submitted to jury where incident occurred on public street and in defendant's yard and several children were playing in public street when incident occurred). *See also City of Bismarck v. Nassif*, 449 N.W.2d 789 (N.D.1989)(jury could reasonably have concluded that defendant's front yard was public place where evidence revealed that bystanders nearby could have heard his profanity and threats directed toward police); *Loera v. Texas*, 14 S.W.3d 464 (Tex.App.2000)(walkway to private residence could be considered a public place under certain circumstances; matter should be resolved on a case-by-case basis).

Accordingly, as the jury could have determined McGowan's conduct was prohibited by the disorderly conduct statute, his arrest was lawful such that he was not entitled to a directed verdict on the charge of resisting arrest with deadly force.[7] Accordingly, the Court of Appeals opinion is

**AFFIRMED IN RESULT.**

TOAL, C.J., MOORE, BURNETT and PLEICONES, JJ., concur.

---

7. McGowan also contends his disorderly conduct arrest was unlawful under *State v. Perkins*, 306 S.C. 353, 412 S.E.2d 385 (1991) (holding that raising voices to police officers, standing alone, is insufficient to convict of disorderly conduct). The Court of Appeals recently distinguished *Perkins*, holding such an arrest is justified where a defendant is both grossly intoxicated and uses obscene language toward arresting officers. *State v. Pittman*, 342 S.C. 545, 537 S.E.2d 563 (Ct.App.2000). Accordingly, this argument is without merit.