12316

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE 
 CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The
State,        Respondent,
 
 
 

v.

 
 
 
Ravin L.
Johnson,        Appellant.
 
 
 

Appeal From Chester County
Paul E. Short, Jr., Circuit Court Judge

Unpublished Opinion No. 2004-UP-280
Submitted April 6, 2004  Filed April 26, 2004

AFFIRMED

 
 
 
Teresa L. Norris, of Columbia, for Appellant.
Attorney General Henry Dargan McMaster, Chief Deputy Attorney 
 General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, 
 and Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; 
 and Solicitor John R. Justice, of Chester, for Respondent.
 
 
 

PER CURIAM:  Ravin L. Johnson (Appellant) 
 appeals his conviction for voluntary manslaughter.  Appellant argues the trial 
 judge erred in failing to grant a directed verdict.  He contends the evidence 
 offered by the State was insufficient to disprove self-defense as a matter of 
 law.  We affirm.
FACTS
On November 3, 2000, Appellant left his home in 
 West Columbia and drove to Chester to pick up his cousins, Ezekiel Darnell and 
 Mario Johnson.  The purpose of the trip was to bring Mario and Ezekiel back 
 to Columbia because Appellant and Mario worked together and both were due at 
 work the next day. 
Upon arrival in Chester, Appellant went 
 to Brian Jacksons house.  There he met Brian, his brother, two of their friends, 
 Mario and Ezekiel.  Shortly thereafter, Appellant, Ezekiel, and Brian decided 
 to go to a party on Cemetery Street to visit Brandon Johnson, another of Appellants 
 cousins.  Ezekiel and Appellant rode in Marios car, Mario drove Appellants 
 truck, and Brian drove his own car. 
Appellant and Ezekiel stayed at the party 
 for approximately fifteen minutes before deciding to leave and drive back to 
 Columbia.  Mario drove off first in Appellants truck, followed closely by Appellant 
 and Ezekiel in Marios car. [1]   
 Appellant was driving and Ezekiel was riding in the passenger seat.  As Appellant 
 and Ezekiel turned onto Cemetery Street, they noticed Danielle Hughes and Jonathan 
 Mackey walking across the street.   Ezekiel erroneously thought he knew Hughes 
 and, as a result, said something to her as they were passing by.   
Ezekiel noticed that Mackey responded, 
 but he could not make out exactly what had been said because music was playing 
 loudly in the car.  Ezekiel then asked Appellant to back up.  After backing 
 up, it became apparent to Appellant and Ezekiel that Mackey was angry with them. 
   Mackey then pulled a .38 caliber handgun from his pocket and began firing 
 at the car.   One of the bullets shattered the back window of the car and lodged 
 in the rear seat. 
Both Ezekiel and Appellant ducked when 
 the shooting began.  Appellant attempted to shake Ezekiel, but did not get a 
 response.   Ezekiel testified that he became hysterical and panicked.  Unable 
 to get a response from Ezekiel, Appellant reached under his seat and obtained 
 the gun he had taken from his own car earlier in the evening.   Appellant opened 
 his door and fired a single shot at Mackey.  The bullet penetrated Mackeys 
 cheek where it lacerated the base of the brain and spinal cord.  Mackey died 
 in less than a minute.                       
Appellant then shut his door, pushed Ezekiel 
 up, and drove to his uncles house where he attempted to contact his father.  
 Eventually, Appellant and Ezekiel went back to Columbia.  The next morning, 
 accompanied by Appellants mother, father, and uncle, both Appellant and Ezekiel 
 went to the Chester Police Department where they related the previous evenings 
 events and turned over Appellants handgun. 
A Chester County grand jury indicted Appellant 
 for murder.  Appellant did not testify at trial.  At the close of the evidence, 
 Appellants counsel moved for a directed verdict on the murder charge.  Counsel 
 asserted there was no evidence of malice aforethought given the evidence established 
 that Mackey fired the first shot.   However, he stated there might be evidence 
 to sustain a conviction on the lesser included offense of voluntary manslaughter.  
 Throughout this discussion, defense counsel asserted the theory of self-defense.  
 After hearing arguments from counsel, the judge directed a verdict as to the 
 murder charge, finding there was no evidence tending to show malice aforethought.  
 The judge then informed counsel that he would charge the jury on voluntary manslaughter.
The jury convicted Appellant of voluntary manslaughter.   
 After the verdict was read, defense counsel moved for a new trial on the ground 
 the evidence was insufficient as a matter of law as to the charge of voluntary 
 manslaughter.  The judge denied the motion.  He then sentenced Appellant to 
 fifteen years imprisonment.  This appeal follows.
DISCUSSION
Appellant argues the trial judge erred in failing 
 to direct a verdict as to the voluntary manslaughter charge, as the evidence 
 offered by the State was insufficient as a matter of law to disprove self-defense.
In criminal cases, [a] defendant is entitled to 
 a directed verdict when the State fails to produce evidence of the offense charged.  
 State v. McHoney, 344 S.C. 85, 97, 544 S.E.2d 30, 36 (2001).  In reviewing 
 a motion for directed verdict, the trial judge is concerned with the existence 
 of the evidence, not with its weight.  Id.  If there is any direct 
 evidence or any substantial circumstantial evidence reasonably tending to prove 
 the guilt of the accused, an appellate court must find that the case was properly 
 submitted to the jury. State v. McGowan, 347 S.C. 618, 622, 557 S.E.2d 
 657, 659 (2001).   On appeal from the denial of a motion for directed verdict, 
 this Court must view the evidence in a light most favorable to the State.  Id.  

At trial, Appellant argued that he shot Mackey 
 in self-defense.  In order for a defendant to establish self-defense, the following 
 four elements must exist: 

 (1) the defendant must be without fault in bringing on the difficulty; (2) the 
 defendant must have been in actual imminent danger of losing his life or sustaining 
 serious bodily injury, or he must have actually believed he was in imminent 
 danger of losing his life or sustaining serious bodily injury; (3) if his defense 
 is based upon his belief of imminent danger, defendant must show that a reasonably 
 prudent person of ordinary firmness and courage would have entertained the belief 
 that he was actually in imminent danger and that the circumstances were such 
 as would warrant a person of ordinary prudence, firmness, and courage to strike 
 the fatal blow in order to save himself from serious bodily harm or the loss 
 of his life; and (4) the defendant had no other probable means of avoiding the 
 danger. 

State v. Day, 341 S.C. 410, 416, 535 S.E.2d 431, 434 
 (2000).  
The defendant has the burden of raising self-defense.  
 However, once raised, the State has the burden of disproving it beyond a reasonable 
 doubt.  State v. Wiggins, 330 S.C. 538, 544, 500 S.E.2d 489, 492 (1998).  
 Significantly, in this case, the parties only dispute the existence of the first 
 and fourth elements.        
Initially, we note this issue was not properly 
 raised at trial.  During the discussion regarding Appellants motion for a directed 
 verdict on the murder charge, counsel agreed there was evidence to support a 
 voluntary manslaughter charge.  Thus, no motion was ever made to direct a verdict 
 as to the voluntary manslaughter charge.  Although after the jury verdict had 
 been returned, defense counsel made a motion asking the court to strike the 
 verdict and to find as a matter of law the defendant not guilty of voluntary 
 manslaughter due to the insufficiency of the evidence, this does not preserve 
 the issue presented by Appellant in this appeal.   In a criminal case, the only 
 way to contest the sufficiency of the evidence post-trial is to move for a new 
 trial.  State v. Follin, 352 S.C. 235, 258, 573 S.E.2d 812, 824 (Ct. 
 App. 2002), cert. denied (May 30, 2003).  In addition, because Appellant 
 did not raise the issue of insufficiency of the evidence as to self-defense 
 in the court below, it cannot be raised for the first time on appeal.  See 
 State v. Bailey, 298 S.C. 1, 5, 377 S.E.2d 581, 584 (1989) (holding that 
 a party cannot raise one ground for directed verdict to the court below and 
 another on appeal).  Therefore, we find the issue presented by appellant was 
 not properly preserved for our review.
In the alternative, Appellant argues the trial judge erred 
 in failing to grant judgment notwithstanding the verdict (JNOV).   However, 
 JNOV motions are civil in nature and are not appropriate in criminal trials.  
 See Follin, 352 S.C. at 258, 573 S.E.2d at 824 (A motion for 
 JNOV is a civil trial motion, and thus it is improper for a party to move for 
 JNOV in a criminal trial . . . In criminal matters, a motion for a new trial 
 is the only available post-trial motion addressing the sufficiency of the evidence. 
 (quoting State v. Miller, 287 S.C. 280, 282, 337 S.E.2d 883, 884 (1985))) 
 (citations omitted).  Therefore, we need not address this issue.       
In any event, Appellants argument fails on the merits as 
 well.  Viewing the evidence in the light most favorable to the State, we find 
 there was sufficient evidence to present to the jury the question of whether 
 Appellant was acting in self-defense or was guilty of voluntary manslaughter. 
 As to the first and fourth elements of self-defense, the State presented evidence 
 that Appellant stopped his car and then backed up in order to hear Mackeys 
 response to Ezekiels comments.  At one point in his statement, Appellant indicated 
 that he reached under his seat for his gun and then fired at Mackey.  Appellant 
 then got in the car and left.  The pathologist also testified that the gunshot 
 that killed Mackey was fired at some distance.  Furthermore, the evidence indicates 
 that Appellant had an opportunity to flee the scene given he was driving his 
 car and Mackey was standing in the road.  This evidence and sequence of events 
 reasonably tended to prove that Appellant was not acting in self-defense and 
 was guilty of voluntary manslaughter.  Therefore, the judge properly presented 
 the case to the jury.  See Wiggins, 330 S.C. at 545, 500 S.E.2d 
 at 493 (Reversal of a conviction because of the trial courts refusing to 
 give a directed verdict on the ground of self-defense is rare. (quoting William 
 S. McAninch & W. Gaston Fairey, The Criminal Law of South Carolina 
 483 (3d ed. 1996) (Supp. 1997 at 77))). 
Accordingly, Appellants conviction and sentence are 
 AFFIRMED.
 HUFF and STILWELL, JJ., and CURETON, 
 AJ., concur.  

 
 
 [1] Prior to switching cars with Mario, Appellant removed his handgun 
 from his own car and placed it in Marios car.  Ezekiel testified that Appellant 
 did this so that Mario would not get in trouble should he be stopped by the 
 police while driving Appellants car.