24835.   CHRISTIAN *v.* RANSOM, receiver, *et al.*

DECIDED DECEMBER 9, 1935.

*Robert B. Blackburn, William Woodruff,* for plaintiff.
*Harold Hirsch, Marion Smith, Hamilton Lokey,* for defendants.

SUTTON, J.   The plaintiff sued for damages on account of alleged slanderous words uttered by Camp, the agent or servant of Ransom and Hendrix, who were receivers for the Hurt Building in Atlanta.   There was an order permitting such receivers to be sued in Fulton superior court.   From the petition as finally amended, and the demurrers, the following facts substantially appeared:   Camp was in charge of an office building under control of the other defendants as receivers.   There had been an order of court that no peddling or canvassing of the tenants of the building should be permitted.   Camp had been apprised of this order and requested to enforce it.   The plaintiff came into the lobby of the building, where a number of people were waiting for the elevator.   The plaintiff was stopped by Camp, who stated, "I have a right to stop anybody I please, especially a suspicious character like you are, knowing you have been selling stuff here for six or

eight years, and I am going to watch you very closely; and if you are not careful I will get you yet, and we will send you down to the jail and you will sure have to work down there." Camp then called to a policeman, and further stated to plaintiff: "I have a right to send you down. I may do it yet. If any of them upstairs call up and say you are there, I am going to send you down." Said statements were made in the presence of a number of people, and greatly humiliated and embarrassed the plaintiff, and the words, "I have a right to send you down," made in the presence of a policeman and of others, imputed to the plaintiff the commission of a crime. It is alleged that Camp in so using said words was authorized so to do by the receivers. The plaintiff alleged that he was lawfully in the lobby of the building to see a friend, to arrange a business engagement at his home. He alleged that said statements imputed to him a crime punishable by law, were made in reference to his trade, were calculated to injure him therein, and were damaging to him in that they caused him mental pain, humiliation, and embarrassment. Just what plaintiff's trade, business, or profession was is not stated, nor is it alleged how such words damaged or injured him in it.

By amendment the plaintiff alleged that the statements were made by Camp falsely and maliciously; that Camp called a policeman, but did not actually have the plaintiff arrested; and that the utterances in the presence of the people in the lobby greatly humiliated him. About twenty-five people were present, whose names are unknown to the plaintiff, but all of them heard the words used. He further alleged that such words imputed to him a crime involving moral turpitude, to wit larceny, and also illegal trespassing on property of the defendants; that the Hurt Building was a public place; that the policeman was an officer of the City of Atlanta, and was in uniform; that the words were authorized by the receivers and were within the scope and authority of Camp, and such use of these words was under the direction of the receivers; that such words so used were calculated to create a suspicion in the minds of those who heard them, and to cause such persons to distrust the plaintiff, and thus injured him in his occupation as a salesman to the extent of $5000; that such words were uttered by Camp while he was handling the elevator service in the building, and were uttered for the benefit of the receivers. The plaintiff did

not allege any special damage, but sought recovery of general damages alone. The action was generally and specially demurred to by each of the defendants. The court sustained the demurrers, providing that the plaintiff be given ten days to amend the special demurrers. He filed an amendment, and the defendants again demurred. The judge then sustained all of the demurrers, holding that the plaintiff had not sufficiently amended the petition in compliance with the first order, which was the law of the case. To this judgment the plaintiff excepted.

"Slander, or oral defamation, consists, first, in imputing to another a crime punishable by law; or, second, charging him with having some contagious disorder, or being guilty of some debasing act which may exclude him from society; or, third, in charges made against another in reference to his trade, office, or profession, calculated to injure him therein; or, fourth, any disparaging words productive of special damage flowing naturally therefrom. In the last case, the special damage is essential to support the action; in the first three, damage is inferred." Code of 1933, § 105-702. The plaintiff alleges that the words uttered by Camp as agent or servant of the receivers, within the scope of his employment and at their instance and direction, imputed to him the crime of larceny. In short, the plaintiff specifically alleges that the use of the language, "I have a right to send you down," in the presence of a policeman and of other people, imputed to him the commission of a crime, and "that the words used were calculated to impute to plaintiff the crime of larceny which involves moral turpitude, and of illegal trespassing." Did the words quoted above impute to the plaintiff the commission of the crime of larceny? There are several kinds of larceny, simple and grand larceny, larceny from the person, from the house, etc. Code of 1933, §§ 26-2602, 26-2626, et seq. "Larceny or theft, as contradistinguished from robbery by violence, force, or intimidation, shall consist of: 1. Simple theft or larceny. 2. Theft or larceny from the person. 3. Theft or larceny from the house. 4. Theft or larceny after a trust or confidence has been delegated or imposed." § 26-2601. Larceny under our law is theft as contradistinguished from robbery by force or violence. The plaintiff's petition must be strictly construed against him, the case being in this court on exception to the sustaining of a general demurrer. *Bowman* v.

*Chapman,* 179 *Ga.* 49 (175 S. E. 241). In the opinion of this court, the petition as amended does not make a case of the utterance of words imputing to the plaintiff the commission of larceny in any of its forms. As we have seen, the words, "I have a right to send you down," uttered in the presence of a policeman and in the presence of other people, did not charge or impute to the plaintiff the commission of larceny; nor were such words calculated so to do. "The office of an innuendo is to explain that which is of doubtful or ambiguous meaning in the language of the publication, but can not enlarge the meaning of words plainly expressed therein." The plaintiff can not by innuendo draw from an utterance a conclusion not justified by the language used; but it is competent for the plaintiff to explain in this way an ambiguous statement, to point out the intention of the utterer, and to show wherein the effect of the language was to injure his reputation. See *Holmes* v. *Clisby,* 118 *Ga.* 823 (45 S. E. 684) ; *Park* v. *Piedmont &c. Ins. Co.,* 51 *Ga.* 510; *Smith* v. *Wright,* 55 *Ga.* 220. "The office of an innuendo is merely to explain the ambiguity, where the precise meaning of terms employed in an alleged slanderous statement may require elucidation. The true scope and meaning of the statement can not be enlarged or restricted by innuendo." *Whitley* v. *Newman,* 9 *Ga. App.* 89 (2) (70 S. E. 686). "If the words spoken are plain and unambiguous and do not impute the commission of a crime, they can not be enlarged and extended by innuendo." *Morris* v. *Evans,* 22 *Ga. App.* 11, 12. We do not think that the words used in this case can in any sense be said to charge the plaintiff with the commission of the crime of larceny.

The petition does not seek any special damages, and it can not be said that the intention of the plaintiff was to bring his case within paragraph 4 of section 105-702 of the Code, which provides that "disparaging words productive of special damage flowing naturally therefrom" are slanderous. "If merely fraud, dishonesty, immorality, or vice be imputed, no action lies without proof of special damage." *Roberts* v. *Ramsey,* 86 *Ga.* 433 (12 S. E. 644) ; *Ford* v. *Lamb,* 116 *Ga.* 655 (42 S. E. 998). No such a crime as "illegal" trespass is defined in our Penal Code; and to charge one with "illegal" trespass is not to charge him with the trespass made penal under the Code of 1933, chapter 26-30, §§ 26-3001 et seq. The language used by Camp did not charge the plaintiff with the

commission of trespass, indictable under our penal statutes, nor do such words impute such an offense to the plaintiff. Furthermore, it is not the intention of the plaintiff to bring the case within the second paragraph of section 105-702 of the Code, on the theory that they charged him "with having some contagious disorder, or being guilty of some debasing act which may exclude him from society." The petition alleges that the words used charged him with the commission of a crime. The paragraph just cited refers to charging a person with some repulsive act which would cause him to be shunned or avoided; such an act as would exclude him wholly or partially from society. Certainly to charge him with illegal trespass, if the words so used did make this charge, would not be to charge him with a debasing act. The petition does not seek to make a case under this section. *Morris* v. *Evans,* 22 *Ga. App.* 11, 12 (95 S. E. 385).

In the original petition the plaintiff charged that the words used injured him in his profession. The defendants demurred specially on the ground that what the plaintiff's profession was did not appear, nor did it appear how said words were calculated to injure him therein. The judge sustained this demurrer, giving the plaintiff leave to amend. No exception was taken to that order. The plaintiff undertook to amend his petition, alleging that the words uttered by Camp were calculated to injure him in his profession as a salesman, and did damage him in the sum of $5000. The defendants again demurred to this portion of the petition, on the ground that it was not shown how the plaintiff was damaged by the utterance of these words as alleged. It does not appear what the plaintiff was selling, and how the alleged slanderous words were calculated to injure him in his profession. This court is of the opinion that the petition as amended does not make a proper case for submission to the jury on the theory of slanderous utterances damaging the trade, business, or profession of the plaintiff.

Applying the above reasons, the judge did not err in holding. that the plaintiff had not amended his petition to meet the demurrers originally filed and the requirements of the former judgment on them, and in dismissing the action.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*