65390, 65391. BURROW et al. v. K-MART CORPORATION;
and vice versa.

QUILLIAN, Presiding Judge.

The instant appeals arose from the following set of facts. Plaintiff, Idell Burrow, accompanied by her two daughters, visited the K-Mart store on Bankhead Highway to purchase two lamps. The lamps she selected were the last two of that type and she was unable to get them in the original cartons. The salesman procured two cardboard boxes in which he placed the lamps, leaving the boxes partially opened and partially closed — according to plaintiff, two flaps were up and two were down. The salesman carried the boxes to the cashier and gave the cashier the necessary price quotation for the lamps. The cashier rang up the purchase on the cash register and gave plaintiff a receipt. Plaintiff placed the receipt in her purse and waited for her daughters to pay for their purchases before leaving the store. When she picked up her boxes to leave she was approached by Ms. Rozie Lewis, the "store greeter."

Ms. Lewis testified that she approached the plaintiff because the two boxes were open, and she asked: "May I check your box, please?" She said that plaintiff told her she had just bought them and Ms. Lewis could go down to the cash register or ask the salesman who sold it to her. Plaintiff pointed out the salesman. Ms. Lewis said: "Ma'am, I can't go down there." Ms. Lewis opened the boxes, saw the lamps and asked plaintiff for her receipt. Plaintiff produced the receipt and was then permitted to take her purchases and leave.

Plaintiff gave a different version of the encounter. She testified that as she picked up her boxes, Ms. Lewis approached and said: "I got to search your boxes." She said: "I have my receipt." Ms. Lewis stated: "I still got to search your boxes" and "snatched" the boxes from her hands. Plaintiff asked Ms. Lewis to check with the cashier or the salesman who sold them to her — and she pointed him out. "She was talking very loud and rude. I said, 'Why are you searching me?' 'Because it is my job.'" After the search was completed, Ms. Lewis "told me I could go . . . I was crying. I couldn't keep from crying." She testified that she was "embarrassed . . . just really hurt . . . ashamed . . . and when I looked around, people were looking. I was really embarrassed." Plaintiff complained to the manager and the manager told Ms. Lewis: "This lady don't like the way you searched her." Ms. Lewis said: "If I had it to do all over again I would do it . . . If you come through here with a box, I will search you." Plaintiff stated: ". . . they both looked at each other and kind of smiled and I was more hurt then than I was at first." There was testimony that the plaintiff has been "anxious and depressed" since this incident.

The evidence addressed at the trial with regard to K-Mart policies as to packages or boxes may be summarized as follows. K-Mart has a large sign prominently displayed at the entrance that "WE RESERVE THE RIGHT TO INSPECT ALL PACKAGES." The K-Mart manager testified that the "store greeter's" duties were to check all packages coming into the store to make sure they were sealed and if not sealed, she would seal them with a tape in "the color of the day" — or the customer could leave the package with the "store greeter" and pick it up on the way out. The inspection of the packages of persons coming into the store was voluntary and if they did not desire to have their package inspected they could depart from the store. The "store greeter's" duty as to persons leaving the store was to insure that sales receipts were visible. If "their sales receipts are not readily visible . . . she will ask that the customer show their sales receipt on the way out." The manager stated that "all boxes are checked. Open boxes are checked entering or leaving the store . . . [because] there could be some things concealed in those boxes." Ms. Lewis said that she checked open boxes to insure that the articles therein were the same as those on the receipt.

Plaintiff and her husband brought this action in which it was alleged that the defendant K-Mart "falsely imprisoned the plaintiff Idell Burrow, slandered her, and accused her of wrong doing." The plaintiff's husband joined in the suit seeking damages for loss of consortium. However, the trial court directed a verdict for the defendant on the husband's claim and submitted to the jury the problem of whether or not the plaintiff could recover based on two theories: 1) slander; 2) false imprisonment. The jury found for plaintiff in the amount of $25,000 for slander and $25,000 for false imprisonment. Thereafter, the trial court granted a judgment n.o.v. against plaintiff as to the slander issue. In Case No. 65390 plaintiffs appeal from those judgments dealing with slander and loss of consortium. In Case No. 65391 the defendant — K-Mart, appeals from the trial court's denial of a new trial on the verdict and judgment for damages for false imprisonment. *Held:*

1. Plaintiff contends the trial court erred in granting a judgment n.o.v. as to her recovery of $25,000 for slander. Under Code Ann. § 105-702 (OCGA § 51-5-4), slander may be committed in either of four methods, only one of which is applicable: "1) imputing to another a crime punishable by law." Plaintiff argues that the words and actions of the "store greeter" were "tantamount to saying, 'I believe you stole something.' " "From all of that, you can well draw the innuendo that could constitute slander."

We agree with plaintiff that intent and meaning of alleged defamatory statements may be gathered not only from the words

themselves but from the circumstances under which they are uttered as well. *Camp v. Maddox,* 93 Ga. App. 646 (2) (92 SE2d 581); Annot. 29 ALR3d 961, Accusation of Shoplifting — Slander. One of those circumstances was the large and prominently displayed sign at the entrance which advised all patrons that K-Mart reserved the right to inspect all packages. Ms. Lewis did that and nothing more — although, as viewed by plaintiff, she was neither discreet nor polite. Ms. Lewis' words and actions, even as interpreted by the plaintiff amounted to nothing more than: "I'm going to check your boxes, it's my job." No criminal offense was imputed to the plaintiff. *Wittern v. High Co.,* 36 Ga. App. 117 (135 SE 765); *Christian v. Ransom,* 52 Ga. App. 218 (183 SE 89); *Braden v. Baugham,* 74 Ga. App. 802 (2) (41 SE2d 581); *F. W. Woolworth Co. v. Loggins,* 115 Ga. App. 557 (3) (155 SE2d 462); see also *Brown v. Colonial Stores,* 110 Ga. App. 154, 157 (138 SE2d 62); *Abner v. W. T. Grant Co.,* 110 Ga. App. 592 (1) (139 SE2d 408).

" 'The office of an innuendo is to explain that which is of doubtful or ambiguous meaning in the language of the publication, but cannot enlarge the meaning of words plainly expressed therein.' " *Reece v. Grissom,* 154 Ga. App. 194, 195 (267 SE2d 839). Thus, where the plain import of the words spoken impute no criminal offense, they cannot have their meaning enlarged by innuendo. *Southeastern Newspapers v. Walker,* 76 Ga. App. 57, 60 (44 SE2d 697).

We also find that even if the words did impute a crime, the rule is well established in Georgia that: "A corporation is not liable for damages resulting from the speaking of false, malicious, or defamatory words by one of its agents, even where in uttering such words the speaker was acting for the benefit of the corporation and within the scope of the duties of his agency, unless it affirmatively appears that the agent was expressly directed or authorized by the corporation to speak the words in question." *Behre v. National Cash Reg. Co.,* 100 Ga. 213 (1) (27 SE2d 986). Accord, *Swift v. S. S. Kresge Co.,* 159 Ga. App. 571, 572 (284 SE2d 74) and cases cited therein. There is nothing to show such direction on the part of K-Mart as to come within the exception to the rule.

" '[W]hen, as here, a corporation engaged in the retail mercantile business impliedly extends an invitation to the public to trade there, the law requires of such corporation the same degree of diligence to protect its customers from the tortious misconduct of its employees as it requires of a natural person to protect an invitee from the misconduct of its agents and employees acting about their master's business within the scope of their employment. The misconduct may involve elements of slander, but the gist of the right of recovery is not based on slander, but is based on the right of the invitee to be

protected from any tortious misconduct on the part of the corporation from its agents and employees acting within the scope of their duties and about their master's business.' " *Colonial Stores v. Coker,* 74 Ga. App. 264, 266 (39 SE2d 429). Although in cases of this sort the ingredients of the action for "tortious misconduct" are often present, in the case sub judice this issue was never presented to the jury. The plaintiff requested a charge to such effect but the charge was not given. Hence, no determination in this vein is required.

The trial court did not err in directing a verdict against plaintiff on her allegations of slander.

2. As we find no basis for recovery based on loss of consortium the trial judge did not err in directing a verdict for the defendant on that issue.

3. K-Mart Corporation has cross-appealed from the judgment of the trial court in denying its Motion for New Trial on the general grounds — contending the verdict was contrary to the law and evidence.

This raises the issue regarding the plaintiff's second theory' of recovery — false imprisonment. Our Code defines false imprisonment as consisting of "the unlawful detention of the person of another, for any length of time, whereby he is deprived of his personal liberty." Code Ann. § 105-901 (Code § 105-901).

"In an action to recover damages for false imprisonment, the only essential elements of the action are the detention, and the unlawfulness of the detention." *Waters v. Nat. Woolen Mills,* 142 Ga. 133, 136 (82 SE 535). The cases have emphasized two points: "Any restraint, however slight upon another's liberty to come and go as he pleases, constitutes an arrest. There is an illegal arrest and false imprisonment of another where he is detained for any length of time against his will." *Conoly v. Imperial Tobacco Co.,* 63 Ga. App. 880, 885 (12 SE2d 398).

"The restraint constituting a false imprisonment may arise out of words, acts, gestures or the like, which induce a reasonable apprehension that force will be used if plaintiff does not submit; and it is sufficient if they operate upon the will of the person threatened, and result in a reasonable fear of personal difficulty or personal injuries." *Abner v. W. T. Grant Co.,* 110 Ga. App. 592, 594-595, supra. Prosser explains that "imprisonment" was originally intended to have meant stone walls and iron bars, but under modern tort law an individual may be imprisoned "when his movements are restrained in the open street, or in a traveling automobile . . . or is compelled to go along with the defendant." Prosser, Law of Torts (4th Ed.) 42, § 11.

The only Georgia case presented with a problem similar to the

instant case is *F. W. Woolworth Co. v. Loggins,* 115 Ga. App. 557, supra. In that case the plaintiff brought a lamp she had purchased in another store into defendant's store, ate lunch and left. An employee of the defendant followed the plaintiff out of the defendant's store, ran up behind the plaintiff as she was crossing a street, took the lamp and ran back in the store. The plaintiff followed the employee back in the store and after the manager asked plaintiff if she had taken the lamp from the store, he returned it to her.

The opinion, without discussion, found no false imprisonment, citing *Abner v. W. T. Grant Co.,* 110 Ga. App. 592, 594, supra. That case involved a situation where a customer, again outside a store, when asked by an employee if a handbag was purchased in the store, replied "This is mine," and showed the employee "my usual things in it." There, the handbag was not taken from the customer who voluntarily showed its contents and the only similarity was that both events occurred outside the store. Since that is the only similar feature we must assume that was the basis of the *Loggins* decision (*F. W. Woolworth Co. v. Loggins,* 115 Ga. App. 557 (2), supra,) — that is, there is no duty owed for an occurrence outside the bounds of the store. See *Greenfield v. Colonial Stores,* 110 Ga. App. 572 (139 SE2d 403), finding no "tortious misconduct" for actions committed off the premises of a store.

Although the Georgia cases have not addressed the problem where one is detained by the act of another exercising dominion over one's personal possessions, other jurisdictions have confronted such issue. As Prosser points out: "A substantial number of cases in recent years have found false imprisonment where the plaintiff surrendered his freedom of motion because of force directed against his valuable property." Prosser, Law of Torts (4th Ed.) 45, § 11.

Three examples of this facet of false imprisonment are exemplified in cases decided by our sister states.

In Griffin v. Clark, 55 Idaho 364 (42 P2d 297) it was found that "Where one was restrained of her liberty by means of the removal of her baggage from the train on which she was traveling, and followed it to regain possession, and was thereby caused to remain after departure of the train, the circumstances constituted false imprisonment." 32 AmJur2d 72, False Imprisonment, § 15.

In National Bond & Invest. Co. v. Whithorn, 276 Ky. 204 (123 SW2d 263) where there was an attempt to repossess a car, the conditional purchaser opposed the repossession to the extent of remaining in the car and applying the brakes while the car was being towed away. There was no effort made to prevent the purchaser from leaving the car, in fact, there were some acts designed to force him to leave, but the court found a jury question as to false imprisonment

since the party was not required to surrender possession of the vehicle and was entitled to assert his rights.

In Ashland Dry Goods Co. v. Wages, 302 Ky. 577 (195 SW2d 312), the plaintiff's purse was taken from her in the course of the defendant store's employee's investigation into whether she was shoplifting. The court found the restraint of her possessions acted to restrain her and presented a jury question as to whether she was imprisoned.

The common thread running through these cases is that where one is deprived of one's property he (or she) need not supinely surrender such possession but is in fact entitled (if not compelled) to remain until repossession is effectuated. Of course, one might always abandon such property but the need to protect one's own property acts as a coercive force in restraining one from leaving. The exercise of dominion over the property serves also to exercise dominion over the person owning such property. We think the rationale of these cases comports with the fundamental purpose and concept of Georgia law which finds false imprisonment in acts which operate upon the will of the person threatened and may result in a reasonable fear of personal difficulty.

How stand the facts of our present case under the rules we have enunciated? Here, according to the plaintiff's testimony she was told the boxes had to be searched and they were "snatched" from her hands. Furthermore, at the conclusion of the search the plaintiff was told "she could go" by the store employee. Is this not evidence from which the jury as trier of fact might ascertain that the plaintiff, as a result of the actions and language used by the defendant's employee ("I got to search your boxes") and the act of seizing her property, was intimidated into remaining a captive of the store until she was released? The plaintiff did not actually have the choice of leaving since to do so would abandon her property, and in fact concede that it was not hers. Surely the store employee recognized that plaintiff would not leave without the boxes containing valuable merchandise and it may be inferred that the employee intended to restrain and control both the property and the person of the plaintiff until the search was completed. This is further evidenced by the concluding statement addressed to the plaintiff that she "could go" indicating that the plaintiff was now released from custody.

A jury question was presented on the facts before us as to whether the words and acts by the defendant's employee operated upon the plaintiff's will so as to restrain her. Thus, the trial judge did not err in refusing to grant the defendant a new trial as to the false imprisonment.

4. The defendant's exception to the charge involved the slander

issue which we have already decided in defendant's favor.

*Judgments affirmed in 65390 and 65391. Sognier and Pope, JJ., concur.*

DECIDED APRIL 15, 1983.

*Irwin M. Levine,* for appellants.
*George W. Hart, Lawrie E. Demorest,* for appellee.