THE STATE OF SOUTH CAROLINA

THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State,       
Respondent,
 
 
 

v.

 
 
 
Julian P. Rogers,       
Appellant.
 
 
 

Appeal From York County
Alison Renee Lee, Circuit Court Judge

Unpublished Opinion No. 2003-UP-335
Heard January 14, 2003  Filed May 15, 
 2003   

AFFIRMED

 
 
 
Thomas F. McDow, of Rock Hill; for Appellant.
 Attorney General Henry D. McMaster, Chief 
 Deputy Attorney General John W. McIntosh, Assistant Deputy 
 Attorney General Charles H. Richardson, Assistant Attorney 
 General Melody J. Brown, all of Columbia; Solicitor Thomas 
 E. Pope, of York; for Respondent. 
 
 
 

 HEARN, C.J.:  Julian P. Rogers was convicted of malicious 
 injury to personal property, greater than $1,000 but less than $5,000.  He was 
 sentenced to two years imprisonment, suspended upon the service of one year 
 of probation and payment of $4,000 in restitution.  On appeal, Rogers argues 
 the trial judge erred by (1) denying his motion for a directed verdict because 
 the State failed to prove his criminal intent; (2) refusing to allow Rogers 
 to assert a claim of false imprisonment as a defense to his charges; (3) refusing 
 Rogerss additional requested voir dire questions; and 4) limiting Rogerss 
 closing argument to twenty minutes.  We affirm.
FACTS
Rogers was hired to grade a tract of land for a development 
 project.  After three months of work, the contractor had not yet paid Rogers 
 for his services.  Accordingly, Rogers decided to retrieve his equipment from 
 the worksite. [1]   Rogers and his employee, Ricky 
 Robinson, drove a large trailer to the jobsite and proceeded to load the grading 
 equipment onto the trailer.    
The contractors son, Scott Miktuk, lived near the jobsite 
 and attempted to prevent Rogers from removing his equipment.  Miktuk blocked 
 the only exit on which Rogers could maneuver the large trailer by parking his 
 pickup truck lengthwise across the road.  Rogers repeatedly asked Miktuk to 
 move the truck.  Finally, after Miktuk refused, Rogers used a forklift to lift 
 Miktuks truck out of the path of the trailer.  Miktuks truck was damaged in 
 the process.    
Thereafter, Miktuk retrieved his truck and blocked the road 
 a second time.  He exited the vehicle and placed the keys in his pocket.  A 
 scuffle over the keys ensued involving Rogers, Robinson, and Miktuk.  The police 
 were summoned, but no arrests were made because the responding officer determined 
 that the area was outside of his jurisdiction.   
Miktuk later sought an arrest warrant, charging Rogers with 
 assault and battery and malicious injury to personal property in excess of $1,000.  
 Robinson was also charged with assault and battery.  Before trial, an additional 
 charge for malicious injury to personal property in excess of $5,000 was filed 
 against Rogers.  Rogers and Robinson were tried together. 
 [2]   Rogers was acquitted on the assault and battery charge and the charge 
 for malicious injury to personal property in excess of $5,000.  However, the 
 jury found Rogers guilty of the lesser malicious injury to property charge.  
 This appeal follows.
I. Denial of Directed Verdict
Rogers argues the State presented no evidence that 
 he intentionally or willfully caused harm to Miktuks truck.  Accordingly, Rogers 
 claims the trial judge should have directed a verdict in his favor on the charge 
 for malicious injury to property.  See State v. Bryant, 316 S.C. 
 216, 447 S.E.2d 852 (1994) (finding the trial judge should have directed a verdict 
 in favor of the defendant where there was no evidence he intended to damage 
 the patrol car when he threw the officer into it).  The State argues that because 
 Rogers failed to address the intent issue at the close of his case, this specific 
 issue is not preserved for appellate review.  We agree with the State.
If a defendant presents evidence after the denial of his directed motion at 
 the close of the States case, he must renew the directed verdict at the close 
 of all evidence in order to preserve the challenge for appeal.  State v. 
 Parler, 217 S.C. 24, 58 S.E.2d 489 (1950); State v. Adams, 332 S.C. 
 139, 144, 504 S.E.2d 124, 127 (Ct. App. 1998).  A party must state a specific 
 ground for a directed verdict motion in order to preserve it for appellate review.  
 Creech v. South Carolina Wildlife Marine Resources Dept., 328 S.C. 24, 
 34, 491 S.E.2d 571, 576 (1997).  
At the close of the States case, Rogers moved for a directed verdict on the 
 malicious injury to personal property charges arguing the State failed to present 
 evidence to establish that he intended to damage the truck.  Rogers separately 
 moved for directed verdict as to the assault and battery charge, arguing that 
 he had been falsely imprisoned by Miktuk and was therefore entitled to resist 
 that unlawful detention.  Because Robinson was also charged with assault and 
 battery, he joined in arguing the men were entitled to resist the unlawful detention 
 imposed by Miktuk.  The trial judge denied each of the motions.  Thereafter, 
 Rogers and Robinson presented their defenses.
At the conclusion of the defendants cases, the trial judge heard several motions.  
 First, the State moved to prevent counsel for Rogers and Robinson from arguing 
 their theory of false imprisonment during closing arguments.  The State also 
 requested that the judge instruct the jury that it was not to consider any evidence 
 of Rogerss claim of false imprisonment as a defense to his criminal charges.  
 After hearing arguments, the trial judge granted the States motions.  Immediately 
 thereafter, counsel for Rogers moved for a mistrial arguing, this entire trial 
 has been conducted upon the [defense] of false arrest and the right to resist 
 a false arrest.  
Before making a ruling on Rogerss motion for mistrial, the trial judge heard 
 from counsel for Robinson, who stated, Your Honor, I would renew my motion 
 for directed verdict that I made earlier on the same grounds, and I dont need 
 to be heard further on that matter.  Counsel for Rogers followed, stating, 
 I assume there is no point in defendant Rogers moving for a directed verdict 
 on the same ground in that the court has just in fact ruled on all of 
 that as a matter of law. (emphasis added).  The judge agreed and noted Rogerss 
 position for the record.
The State argues that Rogers failed to raise the issue of intent at the close 
 of all the evidence.  This is a close question.  For this issue to be preserved, 
 Rogers must state with specificity the grounds for his renewed motion for directed 
 verdict.  Creech, 328 S.C. at 34, 491 S.E.2d at 576; see also 
 Adams, 332 S.C. at 144, 504 S.E.2d at 127 (requiring a renewed motion 
 for directed verdict if the defendant presents new evidence).  Here, Rogers 
 failed to renew his challenge on the specific issue of intent.  
When addressing the trial judge, counsel for Rogers assumed, and the judge 
 agreed, that it was futile for him to move for a directed verdict on the 
 same ground on which counsel for Robinson had just moved because the judge 
 had just ruled on that issue.  That prior ruling concerned only the issue of 
 false imprisonment.  Moreover, Robinsons sole ground for his motion for directed 
 verdict was that he and Rogers had been unlawfully detained.  In light of these 
 considerations, this colloquy was certainly sufficient to preserve Rogerss 
 motion for directed verdict on the issue of the alleged false imprisonment, 
 [3] but was not sufficient to preserve 
 the separate issue of intent.       
The lack of preservation on this issue lies in the realization that this argument 
 was exclusive to Rogers as a defense to the charge for malicious injury to Miktuks 
 truck.  Importantly, Robinson was not charged with damaging the truck and, therefore, 
 never raised the issue of intent to the trial judge.  Instead, Robinson based 
 his motion solely on the false imprisonment argument.  When Rogers discussed 
 the futility of renewing his directed verdict motion on the same ground as 
 counsel for Robinson had just unsuccessfully done, he limited himself to preserving 
 only those arguments raised by Robinson.  Rogers thus failed to seek a renewed 
 ruling on the issue of his intent to damage the truck.  Accordingly, this issue 
 is not preserved for our review. 
II.  Rogerss Defense of False Imprisonment
Rogers argues the trial judge erred in refusing to allow 
 the jury to consider whether he was entitled to use force to free himself from 
 the false imprisonment imposed on him by Miktuk.  This is a novel question in 
 South Carolina.   
Rogers claims that he was falsely imprisoned when Miktuk 
 blocked his exit from the jobsite by placing the truck across the only roadway 
 on which the large trailer could be driven. [4]   Rogers claims that because this detention was unlawful, he 
 was justified in using force to free himself and, therefore, cannot be held 
 responsible for incidental damage caused by his efforts to escape.  The trial 
 judge ruled as matter of law that the circumstances did not support a claim 
 of false imprisonment.  Moreover, the judge stated that because false imprisonment 
 is civil remedy, it has no application in a criminal case.  Accordingly, the 
 trial judge refused to charge the jury on false imprisonment or false arrest, 
 and ordered Rogers not to raise this theory during closing arguments.  
At trial, Rogers asserted that he was unlawfully detained 
 under both false arrest and false imprisonment theories.  The trial judge noted 
 that because Miktuk had witnessed Rogers damage his truck with the forklift, 
 he may have been justified in detaining Rogers the second time he blocked Rogers 
 from leaving in order to accomplish a citizens arrest. The determination of 
 whether Miktuk had probable cause to arrest Rogers at that point is a question 
 of fact for the jury to determine.  Jones v. City of Columbia, 301 S.C. 
 62, 65, 389 S.E.2d 662, 663 (1990).  Accordingly, whether Rogers was attempting 
 to resist an unlawful arrest at the time of the ensuing assault and battery 
 would depend on the jurys determination of whether Miktuk was justified in 
 arresting Rogers.  Id. at 64, 389 S.E.2d at 663 (An action for false 
 imprisonment cannot be maintained where one is arrested by lawful authority.).  
 Importantly, however, even if Rogers should have been allowed to argue his right 
 to resist a false arrest, we hold any error was harmless.  Rogers was acquitted 
 of assault and battery, which is the only charge to which any allegation of 
 false arrest applies.  
We therefore believe the only relevant issue for determination 
 is Rogerss claim that he is also entitled to reasonably resist a false imprisonment.  
 It is undisputed that Rogers had committed no criminal act when Miktuk first 
 blocked Rogerss exit. Thus, Rogerss detention immediately prior to his damaging 
 Miktuks truck is more aptly characterized as false imprisonment, not false 
 arrest.  Because Rogers was convicted for this damage, his theory that one is 
 entitled to resist false imprisonment without incurring criminal liability is 
 the dispositive issue in the case.  
 A.    False imprisonment under these 
 facts 
To prove a claim of false imprisonment, the victim must 
 establish, (1) the actor restrained him, (2) the restraint was intentional, 
 (3) the restraint was unlawful.  Jones v. Winn-Dixie Greenville, Inc., 
 318 S.C. 171, 175, 456 S.E.2d 429, 432 (1995).  The tort of false imprisonment 
 may be committed by words alone, or by acts alone or by both, and by merely 
 operating on the will of the individual, or by personal violence[] . . . 
 .  Id. (emphasis added).  Here, Miktuks efforts to detain Rogers were 
 admittedly intentional.  Furthermore, Miktuk had no legal justification for 
 detaining Rogers because it is undisputed that the equipment belonged to Rogers. 
 Accordingly, if Rogers was restrained, the restraint was unlawful because Rogers 
 was committing no crime by removing his own equipment.  See William H. 
 Grimball, South Carolina Jurisprudence, False Imprisonment § 9 (To make 
 a citizens arrest, one must act with good motives, i.e., bringing to justice 
 a felon who had violated the law. He cannot have an ulterior motive such as 
 the collection of money owed to him.).  Thus, the only question is whether 
 Rogers was restrained by Miktuk when he blocked Rogerss exit. 
The trial judge ruled as a matter of law that Rogerss and 
 Robinsons personal liberty was not restrained; therefore there could be no 
 false imprisonment.  Specifically, the trial judge stated, The fact that they 
 chose not to walk ten miles to get away, they were not being restrained or prevented 
 from [walking away] if they needed to get away and thats the clear issue here 
 and as a matter of law Im ruling that they were not . . . restrained.  The 
 trial judge further explained that [Rogers] could have picked up and walked 
 off.  . . . He could not have left by the means by which he wanted to leave 
 which was in his [trailer] with his equipment, but he could have left the scene.   

Other jurisdictions have considered the specific issue of 
 whether one may be restrained by the act of another exercising dominion over 
 ones personal possessions.  In National Bond and Investment Co. v. Whithorn, 
 123 S.W.2d 263 (1938), there was an attempt to repossess a car.  The driver 
 of the car opposed repossession by remaining in the car and applying the brakes 
 as it was being towed away.  The court found there was a jury question as to 
 the issue of false imprisonment because the driver was not required to surrender 
 possession of the vehicle and was entitled to assert his rights.  South Carolina 
 considered a similar case in Beraho v. S.C. State College, 302 S.C. 129, 
 394 S.E.2d 28 (Ct. App. 1990).  In Beraho, the victims car was about 
 to be towed away when the victim jumped into the vehicle and was towed away 
 inside it. [5]   This court held that, as a practical 
 matter, the victim had imprisoned himself and was therefore barred from asserting 
 his false imprisonment claim based on his consent to the detention.
We find Whithorn factually distinguishable from Beraho.  
 In Beraho, the victim arrived at the scene and climbed into the car as 
 it was about to be towed.  In Whithorn, however, the victim was stopped 
 on the road by the repossessors and remained in his car, continuously protesting 
 the repossession, until the tow truck arrived and ultimately towed the victim 
 and his car away.  Thus, in Whithorn the victim and his car were detained 
 together during the entire encounter.  The only way for the victim to have obtained 
 his personal freedom was to have surrendered possession of the vehicle.  To 
 the contrary, the victim in Beraho, was in no way restrained until he 
 voluntarily restrained himself by climbing into the car as it was being towed.  

In Burrow v. K-Mart Corporation, 166 Ga. App. 284, 
 304 S.E.2d 460 (1983), the Georgia Court of Appeals considered whether one may 
 be detained by the act of another exercising dominion over ones personal possessions.  
 Quoting Prosser, Law of Torts (4th Ed.) 45, § 11, the court recognized, A 
 substantial number of cases in recent years have found false imprisonment where 
 the plaintiff surrendered his freedom of motion because of force directed against 
 his valuable property.  Id. at 288, 304 S.E.2d 464.  The court followed 
 the reasoning in Whithorn and held that the exercise of dominion over 
 the valuable possessions of a person is tantamount to exercising dominion over 
 that person.  The court stated:

The common thread running through these cases is that where 
 one is deprived of ones property, he (or she) need not supinely surrender such 
 possession but is in fact entitled (if not compelled) to remain until repossession 
 is effectuated.  Of course, one might always abandon such property but the need 
 to protect ones own property acts as a coercive force in restraining one from 
 leaving. 

Id. at 289, 304 S.E.2d at 464-65.   The court found 
 that the coercive effect of exercising dominion over the victims property was 
 sufficient to establish a claim of false imprisonment due to acts which operate 
 on the will of the person threatened and may result in a reasonable fear of 
 personal difficulty.  Id.
In Burrow, the victim was told that boxes she was 
 carrying inside the store would have to be searched, and thereafter they were 
 snatched from her hands.  The victim could not leave the store in possession 
 of her goods without having the boxes searched.  Of course, the victim could 
 have abandoned her goods and walked out of the store.  However, the court reasoned 
 it was for the jury to determine whether the words and acts by the defendant 
 operated on the will of the plaintiff so as to restrain her.  Id. 
With respect to the factual issue of whether Rogers was 
 restrained, we are inclined to agree with the reasoning in this line of cases.  
 It is clear under South Carolina law, as in Georgia, that false imprisonment 
 may be committed by words and acts which operate on the will of the victim. 
 Jones, 318 S.C. at 175, 456 S.E.2d at 432.  We believe that where an 
 aggressor exercises dominion over the victims valuable property, thereby forcing 
 the victim to abandon such property in order to obtain personal freedom, a reasonable 
 jury could find the aggressors conduct operates on the will of the person, 
 compelling the victim to remain until repossession is effectuated.  This coercion 
 over the will of the victim is sufficient to establish false imprisonment.  

Generally, the blocking of a public highway 
 will not result in false imprisonment.  See Restatement 2d Torts, § 36 
 (stating one who blocks off a highway, intending to prevent the public from 
 passing along it, is not liable for false imprisonment to one whose privilege 
 to travel along that highway has been disrupted).  However, we believe this 
 general rule should not apply in this case.  The example cited by the Restatement 
 in support of this proposition involves the situation wherein the aggressor 
 blocks a portion of a highway on which the victim is traveling, preventing the 
 victim from passing through to the other side.  Id., illustration 11.  
 Significantly, the illustration expressly states that no object is placed 
 in the way of the victim leaving by the way in which he came.  Under these hypothetical 
 facts, the Restatement holds, and we agree, that there is no imprisonment.  
 However, in the present action, Rogers was unable to leave by the way in which 
 he entered.  The facts of this case suggest that the only means of exiting the 
 jobsite with the trailer was along the road that Miktuk blocked.  Accordingly, 
 unlike the example cited by the Restatement, Rogers apparently had no means 
 of escape other than removing the barricade that restrained him.  
As previously noted, if Rogers was restrained, 
 there is no question as to whether the restraint was unlawful and intentional.  
 Based on the premise that Rogers need not obtain his personal freedom at the 
 cost of abandoning his possessions, [6] there was sufficient evidence at trial to create a jury issue 
 as to whether he was restrained by Miktuks actions.  We do not agree with the 
 trial judges conclusion that there was no imprisonment because Rogers was free 
 to walk away from the jobsite.  In this case, as in Burrow and Whithorn, 
 the physical liberties of the victims were not restrained because the victims 
 in these cases could have walked away from the scene.  However, these authorities 
 hold the victims are not required to obtain their physical liberty at the cost 
 of leaving their possessions behind. 
 [7]   Accordingly, there was sufficient evidence upon which the jury could 
 find that Rogers was intentionally and unlawfully detained.  
B.  False imprisonment as a defense to Rogers criminal 
 charges
Although we find there was sufficient evidence to satisfy 
 the elements of false imprisonment, we cannot reverse Rogerss conviction unless 
 we find that false imprisonment is a viable defense to his criminal charges 
 in South Carolina.  
This case presents the issue in an unusual posture.  Typically, 
 one who is unlawfully detained will initiate a cause of action as a plaintiff.  
 Here, however, Rogers argues that his right to free himself from false imprisonment 
 constitutes an affirmative defense to criminal charges resulting from damages 
 he caused in attempting his escape.  
When ruling on Robinsons initial directed verdict motion, 
 the trial judge entertained the notion that resisting a false arrest might be 
 a defense for Robinson because Robinson had done nothing wrong prior to the 
 scuffle that occurred after Miktuks second attempt to block the road.  The 
 court stated, [I]t becomes a jury question as to whether or not Mr. Robinson 
 was in fact resisting what he perceived to be an unlawful detention or whether 
 or not he was aiding [Rogers] in trying to obtain the keys so that they could 
 leave the scene . . . .  At the close of all evidence, however, the trial judge 
 ruled that this theory could not be presented to the jury.  The judge stated, 
 There is no false arrest and there is no false imprisonment.  False imprisonment 
 is a civil remedy and its not applicable in a criminal case.  (emphasis 
 added).  The trial judge further stated that under the laws and constitution 
 of South Carolina, Rogers did not have the right to remove or to bother Miktuks 
 personal property.  The judge indicated Rogerss legal remedy for Miktuks interference 
 with his ingress and egress was limited to obtaining a restraining order against 
 Miktuks actions.  In the alternative, the trial judge said Rogers should have 
 notified the police to have the vehicle removed from the road. 
We find no cases in South Carolina addressing whether 
 the right to resist false imprisonment can be used as an affirmative defense 
 to criminal charges. [8] Because this position has not 
 heretofore been considered in this state, we analyze the merit of this assertion 
 by comparing the doctrines of false imprisonment and false arrest.   
There is little distinction between false arrest and false 
 imprisonment.  Both doctrines require the unlawful restraint of anothers personal 
 liberty or freedom of movement.  Thompson v. Smith, 289 S.C. 334, 337, 
 345 S.E.2d 500, 502 (Ct. App. 1986). [9]   Cases involving false arrest 
 typically involve the aggressors attempt to place under arrest one who is suspected 
 of criminal wrongdoing. [10]   False imprisonment, on the other hand, may 
 arise where the victim is unlawfully detained despite there being no apparent 
 justification for the detention.  Claims for both false imprisonment and false 
 arrest may arise from a single chain of events.  See id.,   (considering 
 false arrest claim based on a lack of probable cause to arrest the victim as 
 well as false imprisonment claim for the period of time the victim remained 
 incarcerated after police became aware of his innocence).  
It is well settled in South Carolina that one may use such 
 force as is reasonably necessary under the circumstances to resist a false arrest.  
 State v. McGowan, 347 S.C. 618, 622, 557 S.E.2d 657, 659 (2001).  Furthermore, 
 the person resisting an unlawful arrest need not show the lack of opportunity 
 for retreat or escape, but is entitled to stand his ground in an effort to repel 
 the detention.  State v. LaCoste, 347 S.C. 153, 165, 553 S.E.2d 464, 
 470 (Ct. App. 2001) (cert. dismissed, April 7, 2003).  The court in McGowan 
 stated: An unlawful arrest, or an attempt to  make an unlawful arrest, stands 
 on the same footing as any other nonfelonious assault[.] The person[,] . . . 
 against whom such an unlawful attempt is directed, is not bound to yield, and 
 may resist force with force[] . . . .  McGowan, 347 S.C. at 623, 557 
 S.E.2d at 661 (quoting State v. Francis, 152 S.C. 17, 149 S.E. 348 (1929)).
These cases make it clear that the victim of a false arrest 
 is entitled to use force to combat the detention, and therefore will incur no 
 liability for harm to the aggressor that results from the victims reasonable 
 use of such force.  Logically extending this premise, where the victim is free 
 from liability for injuring the aggressor, he should also be free from liability 
 for damaging the aggressors property during the escape from an unlawful arrest.  
 Cf. In re Albert S., 106 Md. App. 376, 399-400, 664 A.2d 476, 
 487 (1994) (finding the evidence failed to establish the defendant intended 
 to maliciously damage the arresting officers microphone where the evidence 
 also supported an inference that the defendant was merely attempting to escape 
 from an unlawful arrest when he damaged the equipment).  However, we find no 
 authority extending ones right to resist an unlawful arrest to a civil claim 
 of false imprisonment, thus entitling the victim to take reasonable measures 
 to free himself from the false imprisonment without incurring civil or criminal 
 liability.  This issue has received extremely limited treatment from other jurisdictions 
 as well.  
In State v. May, 367 A.2d 672 (Vt. 1976), the Vermont 
 Supreme Court considered an argument similar to the one before this court.  
 May was convicted of unlawful mischief after he drove his car through a wooden 
 gate on a private toll road.  May argued the act of driving through the gate 
 was a justifiable means of escape from an alleged false imprisonment.  Although 
 the court ultimately held that May failed to establish that he was in fact unlawfully 
 detained, the court made no ruling as to applicability of the defense in general.
A more persuasive case was decided by the Georgia Court 
 of Appeals.  In Nolley v. State, 523 S.E.2d 579, 580 (Ga. App. 1999), 
 the court considered whether a woman, who faced criminal prosecution for aggravated 
 assault, was justified in stabbing a man because he was falsely imprisoning 
 her at the time of the stabbing.  The court reasoned that under the facts of 
 the case, it was for the jury to decide whether the woman had made out her false 
 imprisonment defense.   Because the woman made no effort to escape the confines 
 of the trailer after stabbing the man, the jury reasoned that the stabbing did 
 not occur as a result of her efforts to free herself.  Nevertheless, the jury 
 was allowed to consider whether the woman was attempting to free herself from 
 a false imprisonment.  
Although in Nolley, the issue was submitted to the 
 jury, no South Carolina case recognizes this theory as a defense to criminal 
 charges, and we decline to do so now. We hold the trial judge committed no error 
 by refusing to allow the jury to consider false imprisonment as a defense to 
 a criminal charge when that theory has never before been recognized as a defense 
 in this State.
III.  Proposed Voir Dire Questions
Rogers contends 
 the trial judge erred in denying two of his proposed voir dire questions.  We 
 find this contention lacks merit.
The trial judge declined to accept two 
 of Rogerss three proposed voir dire questions.  The rejected questions were:

1.       Do you understand that the integrity of our jury 
 system is dependent upon the honest [sic] of each of you as individual jurors?  
 If your answer is yes, please stand.
2.       If, during your deliberations of this case, one of your fellow jurors 
 attempted to discuss a point that I instructed you was not relevant to your 
 deliberations in this case and that juror persisted to discuss that point after 
 being reminded of my instructions, would you ask the foreman to report that 
 fact to me.  If your answer is yes, please stand.   

The method and scope of voir dire are matters largely within the discretion 
 of the trial judge.  State v. Matthews, 291 S.C. 339, 342, 353 S.E.2d 
 444, 446-47 (1986); see also Norris v. Ferre, 315 S.C. 179, 181, 
 432 S.E.2d 491, 492 (Ct. App. 1993) (stating the trial judge maintains broad 
 discretion in [the area of voir dire], and an appellate court will rarely second-guess 
 his decision in this regard).  The trial judge is not required to ask all of 
 the submitted voir dire questions.  Wall v. Keels, 331 S.C. 310, 318, 
 501 S.E.2d 754, 757  (Ct. App. 1998).  
The trial judge examined the potential jurors for evidence 
 of bias, opinion, or personal relationships.  The two rejected voir dire questions 
 did not concern matters of bias or prejudice that would impact on juror qualification.  
 Rather, the proposed questions addressed the issue of jury deliberation, which 
 is not required to empanel a fair, unbiased jury.  We therefore find the trial 
 judge was well within her discretion in rejecting the two proposed voir dire 
 questions.  Norris, 315 S.C. at 181, 432 S.E.2d at 492.    
IV.  Limitation of Closing Arguments
Rogers 
 contends the trial judge erred in limiting his closing argument to twenty minutes.  
 We find no abuse of discretion.  
After the defense rested its case, the trial judge announced 
 that closing arguments would be limited to fifteen minutes per party.  Defense 
 counsel objected, arguing that fifteen minutes would be an inadequate amount 
 of time.  The trial judge replied that Robinsons counsel could donate some 
 of his time, and that she would let [Rogers] go over a few minutes but not 
 very much.  The trial judge clarified that a few minutes does not mean 
 5, 10, or 15.    
The trial judge has discretion to limit the amount of time 
 allotted for closing argument.  State v. El, 286 S.C. 560, 561, 335 S.E.2d 
 544, 544-45 (1985).  Once the trial judge removed the issue of false imprisonment 
 from the case, the remaining issues were relatively straightforward.  The jury 
 took only twelve minutes to reach its verdict.  
Furthermore, Rogers presents no evidence suggesting he was prejudiced by the 
 limitation of his closing argument.  See McKissick v. J.F. Cleckley 
 & Co., 325 S.C. 327, 335, 479 S.E.2d 67, 71 (1996) (an appellant seeking 
 reversal of a decision by the trial court must show both error and prejudice).  
 The trial judge noted that Rogerss closing argument was approximately twenty-three 
 minutes in length.  We fail to see how Rogers was prejudiced by a limited closing 
 argument, when he did not adhere to the confines of that limitation. 
Certainly, the trial judge may not limit the defendants 
 closing argument in such a manner that the defendants right to be fully heard 
 is unfairly prejudiced.  See S.C. Const. art. I, § 14 (granting the person 
 charged the right to be fully heard in his or her defense).  However, as Rogers 
 has shown neither error nor prejudice from the trial judges ruling, we find 
 the judge did not abuse her discretion in limiting the duration of Rogerss 
 closing argument.
For the foregoing reasons, Rogerss conviction for 
 malicious injury to personal property is
 AFFIRMED.
CURETON, J., concurs.
ANDERSON, J., concurs in result only in a separate opinion
 ANDERSON, J. (concurring in result ONLY in a separate 
 opinion):  I concur in result ONLY.  I disagree with the reasoning 
 and analysis of the majority.  I agree with the ruling of the circuit judge: 
 False imprisonment is a civil remedy and its not applicable in a criminal 
 case.
To conflate a civil remedy and a criminal defense is troubling to 
 me.  The majority cites a plethora of CIVIL precedent relating to the 
 civil theory of false imprisonment (false arrest).  To hoist the civil theory 
 to the point of a cognizable defense in the criminal law is legalistic misreckoning.  
 I have major concernment with the discussion by the majority of these issues.  
 I disagree with the language and verbiage of the majority.  Concomitantly, I 
 concur in result ONLY.

 
 [1] The State does not dispute that Rogers was the 
 lawful owner of the grading equipment. 

 
 [2]   Robinson was acquitted.

 
 [3]   At the close of the States case, Rogers argued 
 the issue of false imprisonment with respect to the assault and battery charge 
 only.  Initially, we were concerned that Rogers did not preserve this argument 
 with respect to the malicious injury to personal property charge as well.  
 However, in light of Rogers statement at the close of all evidence that the 
 entire trial was conducted on this theory, we find the issue sufficiently 
 preserved with respect to all charges against Rogers.

 
 [4]   There is some debate as to whether there were 
 other exits at the jobsite.  However, Rogers claims that due to the trailers 
 size it would have been impossible to turn it around to reach those exits.  
 Rogers backed the trailer down the road so he could pull forward out of the 
 jobsite.

 
 [5]   The issue of whether the college in Beraho 
 was acting unlawfully by towing his vehicle was not preserved on appeal.

 
 [6]   Even if a distinction could be drawn between 
 possessions he arrived with as opposed to possessions he wished to retrieve, 
 we note that at the time Miktuk initially blocked the road, Rogers could not 
 have left with the trailer in which he arrived at the jobsite.  In any event, 
 we find no legal distinction between the trailer in which he arrived and the 
 equipment he came to retrieve.

 
 [7]   We point out that in State v. May, 367 
 A.2d 672 (Vt. 1976), the court stated in dicta that the driver of the car 
 could have walked away on foot.  We decline to follow this reasoning in light 
 of Burrow and Whithorn.

 
 [8]    We note that Rogers presented absolutely no 
 legal authority to the trial judge in support of the adoption of this novel 
 defense.  Though Rogers called an attorney as an expert witness on the issue, 
 the expert likewise failed to provide any supporting authority.  

 
 [9]   The concurrence suggests the majority relies 
 on a plethora of CIVIL precedent relating to the validity of Rogers 
 asserted defense.  However, in the section of this opinion involving the issue 
 of whether false imprisonment is a viable defense in a criminal action, Thompson 
 v. Smith is the only civil case cited among a plethora of criminal cases.  
 Moreover, Thompson is cited for the limited purpose of illustrating 
 the similarity between the doctrines of false imprisonment and false arrest; 
 it is not cited as support for Rogerss contention.

 
 [10]    Often, the person making the arrest is a police 
 officer, though the doctrine applies in incidences involving citizens arrest 
 as well.